MRS. WILMA WALDEN v. JOHN W. WALDEN.

Western Section. October 24, 1930.

Petition for Certiorari denied by Supreme Court, May 2, 1931.

Hewgley & Pearson, of Jackson, for appellant.
Hu C. Anderson and T. J. Murray, both of Jackson, for appellee.

SENTER, J. The appeal in this case involves the question alone of the amount of alimony and solicitors fees decreed to the complainant in granting an absolute divorce to the complainant against the defendant. The complainant, Mrs. Wilma Walden, filed her original bill in the Chancery Court of Madison County seeking an absolute divorce from the defendant, John W. Walden, alimony to be decreed to her out of his estate and solicitors fees to be allowed to her out of the estate of the defendant. Subsequently, the original bill was amended in certain particulars. The defendant answered the original and supplemental bills, and in his answer denied the material allegations contained therein. At the hearing of the cause at the December, 1927, Term, the Chancellor sustained the original bill and granted to the complainant an absolute divorce from the defendant. The Chancellor further decreed that the complainant was entitled to recover alimony out of the estate of the defendant and also reasonable attorneys fees. Because the record did not fully disclose the amount of property owned by the respective parties, and of just what it consisted, and the revenues derived therefrom, the Chancellor did not fix the amount of alimony and solicitors fees in the decree granting the divorce, but ordered a reference to a special Master on these matters. Upon the coming in of the final report of the Master, exceptions were filed by both parties. The

Chancellor decreed that the property owned by the parties consisted of the real estate, buildings and machinery and equipment and good will of the laundry plant located in the city of Jackson belonging to the defendant, and valued that property at $65,000; that the parties owned as tenants by the entirety certain real estate situated in the city of Jackson, referred to in the record as the Hurt property, the College Street property and the Baltimore Street property, and valued that property at $24,000, further holding that as to that property the complainant and the defendant holding the same as tenants by the entirety before the divorce was granted, were tenants in common as to that property after the divorce was granted.

The Chancellor further held and decreed that the complainant owned farm property situated in Madison County valued at $12,000; and also life insurance policies with a cash value of $1,441.77, and cash $1,050, making a total valuation of property owned by the defendant $91,491.77. The Chancellor further found that the defendant was indebted in the sum of $14,400, and that this indebtedness was secured by certain trust deeds on certain of the property, including the property which was owned by the complainant and the defendant as tenants by the entirety.

The Chancellor further held and decreed that complainant was entitled to have allowed to her as alimony one-half of the $91,491.77, representing the gross value of the property owned by the defendant, or the sum of $45,745, and further decreed that the complainant have the property in Jackson, referred to as the Hurt property, and the College Street property and the Baltimore Street property, or rather, the one-half interest in the same owned by defendant, decreed to her at a valuation of $12,000 to be deducted from the $45,745 allowed her as alimony, leaving a balance of $33,745 to be paid to her by the defendant; and further decreed that the defendant should relieve or remove the encumbrance debt of $14,400 covered by the trust deeds on the Hurt property, the College Street property and the Baltimore Street property, and decreed a lien on the laundry property and the other property remaining to the defendant to secure the payment of the $33,745; and also decreed against the defendant solicitors fees for her solicitors the sum of $2500.

The Chancellor further found and so decreed that the complainant had contributed to the creation of the estate by keeping boarders and running rooming houses in Jackson the sum of $18,500, and had also used $3100, which she had inherited from her mother and brother, and used in the purchase of the real property in the city of Jackson; and because of this contribution to the creation of the estate by complainant that defendant was not entitled to have the $14,400 indebtedness deducted from the gross value of the estate in awarding the alimony.

From this decree the defendant has perfected his appeal to this court, and has assigned numerous errors. The defendant did not appeal from the decree granting an absolute divorce to complainant, and in holding that she was entitled to alimony and solicitors fees out of the estate of the defendant. But the appeal is confined to the amount of the alimony and solicitors fees decreed to the complainant, and the valuations placed upon the property by the Chancellor.

By the first assignment of error it is urged that the Chancellor erred in holding that the laundry including the real estate and machinery and good will of the laundry plant, was worth $65,000, and that there is no competent evidence in the record to warrant that valuation, and that the evidence preponderates against the valuation on that property as fixed by the Chancellor. By the second assignment it is said that the Chancellor erred in not holding and decreeing that complainant is bound by her sworn statement, made in her original bill, to the effect that the laundry and dry-cleaning plant, including real estate, machinery, fixtures, equipment, good will, .etc., was worth or had the market value of $50,000, and in not holding and decreeing that she is estopped to contend that same is of greater value. The third assignment is directed to the action of the Chancellor in sustaining the exception of the complainant made to that portion of the report of the special master wherein the Master fixed the value of the laundry and dry-cleaning plant, including real estate, machinery, equipment, good will, etc., at $36,000. The fourth assignment challenges the correctness of the holding of the Chancellor in holding and decreeing that the complainant and the defendant each owned an undivided one-half interest in and to the College Street, Hurt and Baltimore Street properties, and in not holding that said property was acquired in practically the same way and manner as the other properties, and in not holding that said property should have been treated and considered as a part of the whole estate and divided as such. By the fifth assignment it is urged that the Chancellor erred in not charging the complainant with the full values of the property held by them as tenants by the entireties in the division of the property made for alimony purposes. The sixth assignment complains of the action of the Chancellor in placing the total valuation of the several items of property at the sum of $91,491.77. By the seventh assignment it is said that the Chancellor erred in not adding together the respective values of all properties owned by the parties to this suit, individually, jointly, or otherwise, and in not then awarding to complainant a proper amount or portion thereof as alimony after first deducting from the value of the whole the debts against the same amounting to about $14,400. By the eighth assignment it is contended that the Chancellor erred in valuing the

. properties involved in the suit, for the purpose of allowing alimony, for an amount in excess of $67,940, made up of the following items and values: Laundry complete, equipment, good will, etc., $32,500; properties on College and Hurt Streets, $18,000; farm properties, $10,000; insurance policies, $1,440; totaling $67,940. And further erred in not then deducting from said total value the amount of indebtedness of $14,400, leaving the net value of the estate, $53,-540, and in not basing the allowance for alimony on these figures. The ninth assignment is but a repetition of other assignments on the question of the amount of alimony. The tenth assignment complains of the value placed by the Chancellor on the farm property for the purpose of allowing alimony at a sum greater than $10,000. The eleventh assignment charges error by the Chancellor in finding, holding and decreeing that complainant earned $18,500 by keeping boarders and contributed said sum toward the acquisition of the property involved in this suit; and by the twelfth assignment, that the Chancellor erred in holding and decreeing that by reason of the alleged contribution by complainant toward the acquisition of any of the properties involved in the suit, that the defendant should be required to pay all of the debts against said properties without receiving credit for the amount thereof in the division of the property. The thirteenth assignment is directed to the action of the court in not holding and decreeing that the amount of the indebtedness should have been deducted from the aggregate of the values of the property before making a division thereof, and in not holding that the entire value of the residence properties should be considered as a part of the estate from which alimony should be allowed. By the fourteenth assignment it is urged that the Chancellor was in error in holding and decreeing that the College, Hurt Street and Baltimore Street properties are of values aggregating only $24,000, and insist that said properties are worth $28,000. By the fifteenth assignment it is said that the allowance of $2500 as solicitors fees to complainant's solicitors is exorbitant and excessive. The sixteenth and seventeenth assignments are covered by other assignments on the questions of the valuation of the laundry property as fixed by the Chancellor, and the $18,500 allowed as contribution made by complainant to the accumulation of the estate by keeping boarders and roomers. The eighteenth assignment alleges error by the Chancellor in taxing the defendant with all the costs of the cause. The nineteenth is presented under other assignments and is directed to the amount of alimony decreed by the Chancellor.

In considering and disposing of these numerous assignments of error they will not be separately considered, but the questions made will be considered and disposed of collectively.

There is a considerable conflict in the evidence as to the value of the respective pieces of property involved. The most serious conflict

is with reference to the value of the laundry plant, including the real estate, equipment, machinery, pressing equipment, dry-cleaning good will, etc. The Clerk and Master, in his report, placed a valuation of $36,000 on this property. The Chancellor was of the opinion and so held and decreed that the laundry and dry-cleaning plant, including good will, was reasonably worth $65,000. The complainant in her original bill stated that the laundry plant was worth $50,000. By an amended and supplemental bill she alleged that this property was worth $65,000. Appellant contends that complainant should be held to the valuation fixed by her in her original bill which was sworn to, and is estopped from contending for a valuation in excess of $50,000. We do not think this contention, by appellant can be sustained. By her amended and supplemental bill she fixed the value of this part of the property at $65,000. In both instances she was but stating an estimated value based upon her information. She could not know definitely the value of this property. She did not even know the approximate earnings of this property. We do not think that this brings the case within the rule of a judicial estoppel. The defendant did not testify in the case, but he introduced three witnesses who claimed to have gone through the laundry and dry-cleaning plant, and who were engaged in the laundry business, who testified that the laundry plant and property was worth approximately $32,000. These witnesses did not claim to have appraised each piece of machinery or the equipment of the plant; nor did they know the value of the real estate on which the plant is located. They did not have any knowledge as to the volume of business, or as to the profits earned. Neither of them had had any connection with this plant. The complainant introduced witnesses who testified on the subject. Mr. Riley had been employed in this plant at two different times. He was fairly familiar with the business. He testified that the plant was worth $60,000 or more, and also testified that he had heard the defendant value the laundry property at from $70,000 to $80,000. C. F. Brittan, a witness for complainant, testified that the property was worth from $52,000 to $57,000. Mrs. Walden testified that the defendant had told her that the laundry plant was worth $80,000. She also testified that new equipment had been added to the plant recently amounting to $19,000. The bookkeeper employed in the Second National Bank of Jackson, where the defendant kept his laundry banking account, testified that the deposits of the Southern Laundry Company (the firm name and style of the laundry in question) from May, 1924, to August, 1928, amounted to the sum of $271,156.20. But it appears that $18,624 of this amount represented the proceeds of a loan made to the defendant by the Second National Bank in April, 1926. This would leave a net total of deposits from the laundry business of $252,532.20

for approximately four years, the last four years preceding this suit. It is not shown the exact amount of profits resulting from this volume of business. It is significant, however, that the witness, J. B. Clements, a witness for defendant, and engaged in the laundry business in Jackson and who had placed a valuation on the laundry plant not including the real estate and buildings at only $18,000, and who based his valuation upon the estimated gross business of about $800 per week, testified that his own laundry plant did a gross business of about $1900 per week and that the book value of his plant was $72,000.

For appellee it is urged with much earnestness that the defendant did not testify, although he heard the evidence of the witnesses who had stated that he had valued the plant to them at from $70,000 to $80,000, and heard the other evidence with reference to the volume of business, etc.; that he alone knew the net earnings from the business and could have testified with more accuracy than anyone else. We attach considerable significance to the fact that the defendant, with full knowledge of the evidence of these witnesses, and who no doubt knew, or was in a position to know the value of the laundry plant and the earnings therefrom, was content to sit silently by and let this evidence go unchallenged. There is evidence in the record indicating that in the two or three years preceding the suit the defendant paid around $16,000 on his indebtedness. It is not shown that he had any other source of revenue, and if he was able to make these payments out of the laundry business and at the same time meet his current obligations and living expenses, it would indicate that the earnings from the business, considering the volume, were such as to justify the conclusion reached by the Chancellor that the property was worth $65,000. It is an elementary rule that where a party to a suit is peculiarly in possession of the true facts and refuses to testify as to these facts, that the presumption is that the true facts, if disclosed by him, would be against his contention. The decree for divorce had already been granted at the time the proof was taken before the special Master on the question of the value of the property, and there is no explanation as to why the defendant did not testify as to the values, the earnings, etc., especially in view of the values as fixed by witnesses for the complainant, and the evidence of statements claimed by these witnesses to have been made by the defendant to the effect that he valued the property at from $70,000 to $80,000.

After a careful review of all the evidence on the subject of the value of the property as fixed by the Chancellor, we cannot say that the evidence did not warrant the values as fixed by the Chancellor in his decree on all of the property involved, including the laundry plant, the farm properties and the Baltimore, College and

Hurt Street properties. We deem it unnecessary, and it would but prolong this opinion to go into a detailed analysis of the evidence with reference to the other property involved. While there is some conflict, and especially in view of the exceptions made by defendant to certain portions of the report of the special Master as to the values placed on the farm property and the other property,. not including the laundry property, we are of the opinion that there was no error by the Chancellor in the matter of valuation placed by him on the respective properties involved.

We are also of the opinion that there was no error in the holding of the Chancellor with reference to the state. of the title of the property held by complainant and defendant as tenants by the entireties, before the divorce, and in holding that as to the property, after the divorce they held the same as tenants in common. (19 C. J., sec. 543, p. 182.)

The matter of what amount of alimony should be decreed to a wife out of the estate of her husband in a divorce proceedings is in the sound discretion of the trial judge. This discretion when soundly exercised, will not be disturbed on appeal. There are no hard and fast rules governing the amount of alimony which may be decreed to a wife. Many elements enter in for consideration. The amount of alimony to be decreed is not to be controlled solely by the value of the estate owned by the husband. While this is an important factor to be considered it does not alone control. The value of any separate estate owned by the wife is an element to be considered. The age and station in life are elements, and also the income and sources of income by the respective parties. The way and manner in which the estate has been accumulated and contributions made thereto by the wife, either out of her own funds or by her own work and efforts. In many jurisdictions the general conduct of the husband, and his mistreatment of the wife, where she is free from fault, may also be considered in arriving at a proper award for alimony.

In this case it appears from the evidence in the divorce suit that for several years before the separation the defendant neglected his wife, and was harsh and unkind in his treatment of her. We think it clear from the record that his conduct with other women merits the severest criticism. While the decree of the Chancellor in granting the divorce was put upon the grounds of cruel and inhuman treatment and abandonment, yet the evidence, undisputed and uncontradicted, shows that the defendant was maintaining illicit relations with other women. A Mr. Harris testified that on one occasion he saw the defendant engaged in acts of illicit sexual intercourse in a parked automobile at a secluded place near his farm. He did not identify the woman as being Mrs. Riley, but it is shown by the husband of Mrs. Riley, or the then husband of Mrs. Riley, that on

one occasion, while he was employed at the laundry, he entered the office and caught the defendant kissing and embracing his wife, Mrs. Riley, who was also employed at the laundry, and that he at once left the employ of the defendant. There was also another woman to whom the defendant was paying attention, and his own daughter talked to him about it and urged upon him that he discontinue the affair. Riley divorced his wife, and soon after the divorce was granted in this case and while the question of alimony was still pending, the defendant married Mrs. Riley. There is much evidence in the record as to the conduct of the defendant with other women prior to the separation from his wife. The defendant did not testify in the divorce case, and the only denial of any of the charges is contained in his answer. We cannot escape the conclusion that his general attitude and conduct toward his wife for some time prior to the separation was reprehensible.

When this couple married they were both poor and he was employed as a day laborer. Their first business venture was in a small laundry in Jackson. It appears that for the early years of this business both the complainant and the defendant worked in the laundry. That for several years the laundry business was not a financial success. Mrs. Walden then began operating a rooming house and kept some boarders. It appears that all the profits from the rooming house and keeping boarders was turned into the business. She also inherited about $3100 from the estate of her mother and brother. It appears that this money was invested in real estate in Jackson, or the most of it. In addition to operating the rooming house and keeping boarders for all these years, and until shortly before the separation, complainant rendered considerable assistance at the laundry. She assisted in the bookkeeping and other work at the laundry, and in the early experience of the business she assisted in washing clothes at the laundry.

Taking into consideration all of the various facts and factors properly to be considered we cannot say that in allowing or awarding to complainant one-half of the property owned by the defendant as alimony and in fixing the attorneys fees at $2500, that the Chancellor abused his discretion. Under all the facts and circumstances we do not consider that this was an excessive allowance. We are also of the opinion that $2500 was a very reasonable fee to be allowed for the services of the solicitors for the complainant. However, in arriving at the value of the estate owned by the defendant, the Chancellor fixed the gross value at $91,491.77. The property was encumbered by an indebtedness of $14,400, the debt of defendant. If this $14,400 is deducted from the gross value it would leave the net value of the defendant's property, considering that he owned a one-half interest in the Hurt property, the Baltimore Street property

and the College Street property $77,091.77. The Chancellor held and so decreed that because the complainant had contributed to the accumulation of the estate the sum of $18,500, that the $14,400 indebtedness should not be deducted. Certain of the assignments of error are directed to this holding. The Chancellor held and so decreed that in his opinion the complainant was entitled to one-half of the husband's estate as alimony. As above stated, we concur in this holding of the Chancellor. But we are also of the opinion that if the wife is entitled in this case to one-half of the estate of defendant as alimony, that it would be one-half of the net value of the estate after deducting the $14,400 indebtedness. Nor do we think that the fact that complainant made contributions aggregating approximately $18,000 should be treated in the nature of an off-set to the $14,400 indebtedness. In agreeing to the allowance of one-half of the estate of the husband, the net amount, we have taken into consideration that the estate was accumulated by the mutual work, efforts and contributions of the husband and wife. We are therefore of the opinion that the Chancellor, in arriving at the value of the estate owned by the defendant, including his one-half interest in the property formerly held by them as tenants by the entireties, should have deducted the $14,400 indebtedness, and divided the remainder, in value, one-half to complainant as alimony, and charging her with the $12,000 representing the one-half interest of defendant in the property held by them as tenants in common, and vesting the fee of said property in her, as was done by the decree, and giving to her a lien on the property decreed to the husband to secure the balance of the award, and also requiring him to discharge the encumbrance debt, as decreed by the Chancellor. To this extent the assignments of error are sustained, and the decree of the Chancellor will be accordingly modified, and affirmed in other respects, and the cause remanded to the Chancery Court of Madison County for the carrying out of the decree.

The cost of this appeal will be divided, appellant and sureties on the appeal bond will pay one-half and complainant one-half of the cost of this appeal.

Owen and Heiskell, JJ., concur.