## RUSH v. RUSH.—232 S. W. (2d) 333.

Western Section.   May 19, 1949.

Petition for Certiorari denied by Supreme Court, October 7, 1949.

Patrick Johnson and Harold R. Ratcliff, both of Memphis, for complainant.

J. C. Rutschman, Jr., of Memphis, and David P. Murray, of Jackson, for defendant.

ANDERSON, P. J. The complainant, Lillie B. Rush, was granted an absolute divorce from her husband, Jeff Lee Rush, on the grounds of failure to provide and cruel and inhuman treatment. By way of alimony, she was awarded all of the defendant's interest in the home and personal property therein contained, which was owned by the parties as tenants by the entireties. In addition, defendant was ordered to pay complainant's solicitor a fee of $100 and cost of the court. The defendant appealed and complains only of the award of alimony and the amount allowed the complainant's solicitor as his fee.

The only property owned by the parties is an equity in the home in which they lived, located at 3875 Spottswood Avenue, in Memphis, together with the furnishings therein. The title is vested in them as tenants by the entireties. Just when the house was purchased does not appear, but the purchase price was $10,000. It is encumbered by a first mortgage securing a debt on which there is a balance of $4,000 payable in monthly installments.

It is proper to note that the complainant makes no complaint of the allowance made her and we are therefore not concerned with its adequacy or the form in which it was made.

■■ ■ The general principle by which the court is to be guided in awarding alimony to a wife who obtains absolute divorce from her husband was stated by the court in Walden v. Walden, 13 Tenn. App. 337, 344. ''The matter of what amount of alimony should be decreed to a wife out of the estate of her husband in a divorce proceedings is in the sound discretion of the trial judge. This discretion when soundly exercised, will not be disturbed on appeal. There are no hard and fast rules governing the amount of alimony which may be decreed to a wife. Many elements enter in for consideration. The amount of alimony to be decreed is not to be controlled solely by the value of the estate owned by the husband. While this is an important factor to be considered it does not alone control. The value of any separate estate owned by the wife is an element to be considered. The age and station in life are elements, and also the income and sources of income by the respective parties. The way and manner in which the estate has been accumulated and contributions made thereto by the wife, either out of her own funds or by her own work and efforts. In many jurisdictions the general conduct of the husband, and his mistreatment of the wife, where she is free from fault, may also be considered in arriving at a proper award for alimony.''

■ Under this statement, there can be no doubt that misconduct of the husband is a proper matter to be considered in the making of an award of alimony. See also, McClung v. McClung, 29 Tenn. App. 589, 198 S. W. (2d) 820, 822.

The complainant is forty-two years of age. She and the defendant were married on May 2, 1923. Two children were born to them. One died in infancy and the other, a son, is now twenty-two years of age. He is

unable to work because of illness and makes his home with his parents. On January 6, 1948, the complainant filed a bill of divorce in the Circuit Cort of Shelby County. The defendant filed an answer and cross-bill which was in turn answered by the complainant. Upon the hearing the Circuit Judge dismissed both the original and cross-bill.

The present bill was filed on June 30, 1948, and the final decree was entered on September 30, 1948. On the day the bill in the Circuit Court was dismissed, the defendant told the complainant that he would not live with her again and was going to sell the home and the furnishings, which they owned as tenants by the entirety, and she would get from the profits only what he chose to give her. He made similar statements to others.

At the time the case was tried, both parties were still living in the home, the defendant occupying one of the bedrooms and the complainant and the son occupying the other. The complainant and defendant have not cohabited as husband and wife since December 31, 1947.

Since the proceedings in the Circuit Court were dismissed, the defendant has continually cursed and abused the complainant, accusing her of "going out with other men," and sought to force the son to leave the home. In June, 1948, the defendant told the complainant he was going to get a divorce in Arkansas and marry the woman with whom he was going. He received at the home numerous phone calls from another woman and several letters addressed in the woman's handwriting. On May 15, 1948, the defendant undertook to prevail upon the complainant to agree to sell the home. When she refused, he cursed her, threatening to slap her, and also threatened the son. The situation was such that she called the police, who learning of the nature of the

controversy, declined to arrest the defendant and told the complainant to get in touch with an attorney, "as there was a divorce action between them."

On the day the divorce suit in the Circuit Court was dismissed, the complainant told the defendant that she was ready to live with him, but he declined the offer. At that time the telephone was about to be cut off because the defendant had not paid the bill  He also refused to pay the monthly installment notes on the home, telling the complainant that he was not going to pay them, "so that she and Clifford (the son) would be put in the street."

On cross-examination the defendant was asked if on three specifically named nights he did not visit a woman in apartment four at 405 Madison Avenue. He testified that he did not. He said that on Friday, September 24, 1948, he went to that apartment house and visited a male friend in apartment five, and after leaving there, went to the home of his niece and her husband and spent the night. He denied having gone to the apartment house at all on either Wednesday or Thursday of the same week. In rebuttal, the complainant, her son and another woman testified that on each of the three nights they followed the defendant to the apartment house, saw him arrive about 7:30 o'clock and watched the house front and rear until about 10:00 o'clock, but at that time he had not left on either occasion. Each time the defendant entered the rear door of the building. The complainant testified that they saw the defendant enter apartment 4, in which a woman by the name of Mildred White lived. During the argument at the bar it was admitted that the defendant married this woman, Mildred White, in Desoto County, Mississippi, October 9, 1948, nine days after the final decree in this cause was entered.

■ Error is assigned on the action of the Court in admitting the foregoing evidence with respect to the defendant's visiting the other woman's apartment. It is insisted that no such charge is set out in the bill with the particularity required by Code Sec. 8430. That section deals with the particularity with which charges relied upon as the grounds for divorce must be charged in the bill. It does not appear that the chancellor considered this evidence in granting the divorce and since the other evidence is sufficient to make out a case, it must be presumed that the action was based thereon.

■ Moreover, since the defendant is not challenging the decree for divorce, we fail to perceive the force of this argument. Apart from this, however, the defendant did not state the grounds upon which he objected to the evidence at the time it was offered, and hence is in no position to complain about the action of the chancellor in overruling the objection. Lively v. American Zinc Company, 137 Tenn. 261, 191 S. W. 975.

■ But the case is triable de novo here and the evidence will be considered only for whatever it is worth.

As already indicated, the principal complaint is with respect to the amount of alimony. It is insisted that the chancellor stripped the defendant of all of his property and moreover failed to take into consideration the fact that he was indebted to the amount of $500.

As said, the parties have been married since May, 1923. The complainant is forty-two years of age and the defendant is forty. The son is twenty-two. For the four years preceding the filing of the bill the complainant has worked and supported herself and her son, buying the groceries, clothing, and other necessities of life for the two of them. For the past year the complainant has paid for medical treatment for the afflicted son, with-

out any contribution from the defendant. Complainant earns about $30 per week net after deductions. She paid the monthly installment notes due on the house in the sum of $49.67, for each of the months of May, June, July, August and September, 1948. The defendant is employed by the Ford Motor Company and earns $12 per day gross, before deductions. Just what the deductions are does not appear.

The defendant insists that there is no precedent for taking all of his property and ignoring the fact that he was in debt to the extent of $500; that the precedents established the rule that between one-third and one-half of a husband's property is the proper amount to be awarded.

■■ Alimony is allowed in recognition of the husband's common law liability to support the wife. The amount is in the sound discretion of the judge or chancellor and his action will not be disturbed except in a clear case of abuse of that discretion, Walden v. Walden, supra. No hard and fast rule can be laid down for the determination of the amount of the award or the form which it takes, and there has been no attempt in the adjudicated cases to do so. The facts and circumstances in each particular case must govern. While it has been said that where the award is in solido it is not usual to allow more than half of the husband's estate after making deductions for his indebtedness, Stillman v. Stillman, 66 Tenn. 169, the authority of the court to award all or any part of the husband's estate according to the particular facts or circumstances has been recognized. Boggers v. Boggers, 65 Tenn. 299.

■ In Williams v. Williams, 146 Tenn. 38, 44, 236 S. W. 938, 940, the court makes this pertinent statement:

"The husband owes the duty to his wife of rendering to her suitable support without reference to her financial condition. He ought not to be allowed to escape the performance of that duty by affording his wife cause for separation and placing her in a financial situation worse than it was before his misconduct brought about a legal separation."

Formerly, it was the uniform practice in a case of absolute divorce granted to the wife to award alimony in solido from such resources as the husband had at the time. Indeed, it was held that in such a case, the court had no power to bind the future earnings of the husband. Boggers v. Boggers, 65 Tenn. 299. See also Chenault v. Chenault, 37 Tenn. 248. While it is still the general rule to award alimony in gross where the estate of the husband is such as to serve the purpose of the law, a decree awarding alimony in futuro is valid and enforceable in this jurisdiction, and where the husband has no estate which will answer the purpose, but has an earning capacity, a monthly allowance to be paid by him by way of alimony, is authorized. Brown v. Brown, 156 Tenn. 619, 4 S. W. (2d) 345; Buchholtz v. Buchholtz, 175 Tenn. 87, 132 S. W. (2d) 208.

Those cases in which an award in solido of from one-third to one-half of the husband's property have been made, were cases in which the property was of such a nature as that it reasonably could be expected that the wife would be able to derive from that portion, support comparable to that afforded her by the husband, leaving her, to paraphrase the words of the court in Williams v. Williams, supra, in no worse financial situation than she was in before the misconduct of the husband brought about the separation.

■ In holding authorized under proper circumstances an award of alimony to be paid in monthly installments out of future earnings of the husband, our court has recognized that the great increase in recent years of the number of those who depend almost exclusively upon wages for a livelihood, has made impracticable in many cases an award in solido which will answer the exactions of the law. And we apprehend it to be the rule that in a case like the present, where the husband has no property except an interest in the home and in the household furnishings, his earning capacity is a factor to be considered in determining whether his entire interest in such property shall be given the wife, where the chancellor conceives to be proper an award in solido rather than an award in the form of monthly installments to be paid by the husband.

This view finds recognition, impliedly at least, in the case of Taylor v. Taylor, 144 Tenn. 311, 232 S. W. 445.

■ In the present case, we think, all things considered, the defendant got off lightly. In arguing to the contrary he overlooks the fact that he is no longer obligated to support the complainant and is free to devote his entire earnings of $12 a day exclusively to his own purposes. Upon the other hand, the complainant not only loses her right to look to the defendant for future support but in the nature of things will be onerated with the payment of the $4,000 mortgage indebtedness on the home at the rate of $49.67 per month out of her comparatively small earnings of $30 a week. In addition she will be morally bound to support the adult son so long as he is unable to work, and doubtless will do so.

Moreover, the evidence justifies the conclusion that for the past four years the complainant has been supporting

herself and her son, and thus discharging an obligation which as between them was primarily the defendant's duty to discharge, at least as to her.

A somewhat analogous situation was presented in McClung v. McClung, supra. There, upon the granting of an absolute divorce to the wife on the ground of abandonment and cruel and inhuman treatment, the lower court declined to make an award of alimony other than the interest of the husband in the household furnishings and the personal property belonging to the parties, except an automobile which was given the husband. A house the parties owned by the entireties "was left as provided by law." In rendering its decision the trial court said: "This is not a case for the awarding of alimony." He said he had given the household furniture to the wife because the parties had agreed thereto. Upon appeal the wife contended that she was entitled to alimony. This court sustained this contention and held that the equity of the husband in the home should be given to her as alimony in addition to the personal property awarded to her by the trial court. Cf. Taylor v. Taylor, supra.

Upon the whole case, we are satisfied that the Chancellor did not abuse his discretion in the matter of alimony and his decree is accordingly affirmed at the cost of the defendant. Upon application of the solicitors for the complainant, they are allowed an additional fee of $75 for services rendered in this court, which the defendant is ordered to pay in addition to the costs.

Baptist and Swepston, JJ., concur.