548

MARY WARD SMITH, Appellee, v. JOE WALTER
SMITH, Appellant.—339 S. W. (2d) 326.

Western Section. June 6, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

Aaron C. Brown, Paris, and Billy McElroy, Camden, for appellant.

Peeler & Hollis, Camden, for appellee.

BEJACH, J. This cause involves an appeal by Joe Walter Smith from a decree of the Chancery Court of Benton County, Tennessee entered December 28, 1959 awarding to complainant, Mary Ward Smith, a decree of absolute divorce and granting to her alimony which appellant claims is excessive. The parties will be referred to as complainant and defendant or called by their respective names.

Complainant's original bill in this cause, filed June 30, 1959, alleges that complainant, 42 years of age and the defendant 44 years of age were married November 6, 1937 in Fulton, Kentucky, and that they have resided most of their married life in Benton County, Tennessee. They have two children, both daughters,—Carolyn Jo and Dian, aged respectively 21 and 18 at the time of the trial of this cause in the lower court. The bill alleges, "that the defendant has acquired the habit of drinking since their marriage and has progressively grown worse as the years go by", and also alleges cruel and inhuman treatment as a

ground for divorce or legal separation. The bill prays for process, for alimony, both pendente lite and permanent, for restoration of the complainant's maiden name, Mary Ward, and for general relief. Although no divorce is prayed for in the original bill, nevertheless, complainant prays for restoration of her maiden name. By amendment filed October 15, 1959, however, complainant amends her bill by striking out the prayer for restoration of her maiden name and substituting therefor a prayer for absolute divorce.

Defendant filed an answer in which he denies that he is an habitual drunkard and denies all of complainant's charges of cruel and inhuman treatment. He alleges, with reference to complainant's charges of physical violence, that in every instance he was acting in self-defense, complainant having been the aggressor. In this connection, he charges that on one occasion complainant attacked him from behind with a hammer, and would either have killed him, or done serious injury to him if his sister had not taken the hammer away from her. By amendment to his answer filed December 14, 1959, defendant assumes the position of cross-complainant and prays that he be granted an absolute divorce on the ground of cruel and inhuman treatment. The case was tried December 14, 1959; and on December 28, 1959, the Chancellor entered a decree dismissing the cross bill and sustaining the original bill. The decree grants to complainant an absolute divorce, and awards to her alimony in solido consisting of the interest of the defendant in two pieces of property, title to which was previously in complainant and defendant as tenants by the entireties, being their home place in Camden, Tennessee, and rental property referred to in the record as Highway Grill and Filling Station property. The decree also grants

to complainant as alimony all the household and kitchen furniture and a 1957 two-door Pontiac sedan automobile, motor number 757H7256J. The defendant's interest in the two tracts of land granted to complainant was conveyed to her subject to existing indebtednesses, which complainant was required to pay; and, in addition, complainant was required to pay a note for $1,760 signed by both complainant and defendant, held by the Bank of Camden. In addition, complainant was required to pay her own attorney's fee which was fixed at the sum of $750. For the protection of defendant against liability for the debts which complainant was required to pay, a lien was decreed in his favor on the property conveyed to complainant. The defendant was required to ''pay all other outstanding indebtedness and particularly any indebtedness which is or might constitute an indebtedness against the real estate and personal property decreed to the complainant'', and a lien was awarded to complainant against property which defendant was permitted to retain, for the protection of complainant.

The defendant excepted, prayed and has perfected an appeal from the decree of the lower court. In this court he has filed five assignments of error. It will not be necessary to copy these assignments of error into this opinion, nor discuss them separately. They present for disposition by this Court two questions, only. They are according to the contentions of appellant, (1) That the preponderance of the evidence was in favor of the defendant, rather than in favor of complainant, and, consequently, that the original bill, and not the cross bill, should have been dismissed, and the cross bill sustained with the divorce granted to defendant, as cross complainant; (2) That even if complainant was entitled to the

divorce in this cause, the Chancellor abused his discretion in awarding excessive alimony in her favor.

In addition to complainant herself, the witnesses who testified in her behalf were Carolyn Jo Smith and Dian Smith, daugthers of complainant and defendant, and A. T. Ward, father of complainant. On behalf of defendant, he introduced, in addition to his own testimony, that of ten witnesses. Also, there is stipulation that thirteen other witnesses called by defendant, named in the stipulation, would testify as had Mr. Guy Cole, with reference to defendant's sobriety.

■■ On behalf of defendant, it is contended that, notwithstanding the provisions of Section 27-303 T. C. A., which provides that on appeal the Chancellor's decision is presumed to be correct, ''Divorce suits are triable de novo in the Court of Appeals, and the evidence will be considered only for what it is worth.'' In support of this contention the case of Humphreys v. Humphreys, 39 Tenn.App. 99, 281 S. W. (2d) 270 is cited. The language quoted does appear in that case at page 121 of 39 Tenn. App., on page 281 of 281 S. W. (2d) with Rush v. Rush, 33 Tenn. App. 496, 502, 232 S. W. (2d) 333, cited in support of same. Nevertheless, it is our opinion that where the Chancellor saw the witnesses and heard them testify and observed their attitude and demeanor on the witness stand, his conclusion should carry great weight with this Court, and should not be overturned unless the clear preponderance of the evidence so requires. Much of the argument of able counsel for appellant was directed to his contention that the charge of habitual drunkenness made in the original bill in this cause was not sustained by the proof. It is quite clear, in our opinion, that the overwhelming preponderance of the evidence is against that charge as made in complain-

ant's bill; and, evidently, the learned Chancellor was of the same opinion. He did not sustain the charge of habitual drunkenness, but granted the divorce to complainant on the ground of cruel and inhuman treatment. In our opinion, the specific acts relied on by complainant as constituting cruel and inhuman treatment and proved by the testimony of complainant's witnesses, were amply sufficient to warrant the granting of a divorce on that ground, if the Chancellor believed the complainant's witnesses with reference to same, rather than those of the defendant, and especially that of complainant rather than that of defendant. True it is, the defendant contends that in every instance he was acting wholly in self-defense and that complainant was the aggressor. He offered some proof in corrobration of his contention; and the testimony of his two sisters tends to support his claim that complainant, on one occasion, some eight years before the filing of the suit for divorce in this cause, made an attack on him with a hammer. Defendant's sisters did not, however, see nor hear what had occurred immediately preceding the incident of the hammer attack; and, obviously, the learned Chancellor believed the testimony of complainant rather than that of the defendant as to which of them had been the aggressor. Furthermore, the circumstance that both of defendant's daughters testified against him and in favor of the complainant must have carried great weight with the Chancellor, as it does with this Court. Even though the charge of habitual drunkenness made against defendant was not established, if while under the influence of intoxicants defendant was guilty of acts which constitute cruel and inhuman treatment as a ground for divorce, that charge may properly be sustained and a divorce granted because of same, just as if they had

been perpetrated while he was cold sober and had no connection whatever with drinking.

With reference to the contention that the Chancellor abused his discretion in regard to the amount awarded as alimony in the instant case, after careful consideration of the matter, it is the opinion of this Court that the Chancellor did not abuse his discretion. As was said by Anderson, P. J., speaking for this Court in Rush v. Rush, 33 Tenn. App. 496, at page 503, 232 S. W. (2d) 333, at page 336:

"Alimony is allowed in recognition of the husband's common law liability to support the wife. The amount is in the sound discretion of the judge or chancellor and his action will not be disturbed except in a clear case of abuse of that discretion, Waldon v. Waldon, supra. (13 Tenn. App. 337, 344). No hard and fast rule can be laid down for the determination of the amount of the award or the form which it takes, and there has been no attempt in the adjudicated cases to do so. The facts and circumstances in each particular case must govern. While it has been said that where the award is in solido it is not usual to allow more than half of the husband's estate after making deductions for his indebtedness, Stillman v. Stillman, 66 Tenn. 169, the authority of the court to award all or any part of the husband's estate according to the particular facts or circumstances has been recognized. Boggers v. Boggers, 65 Tenn. 299."

In Taylor v. Taylor, 144 Tenn. 311, 317, 232 S. W. 445, 447, the Supreme Court, speaking through Mr. Justice McKinney, said:

"Where a husband has cruelly and inhumanly treated his wife, and has willfully and without excuse

deserted her after she has reached middle life, we are of the opinion that one-third of the defendant's income, under the facts of this case, should be paid to her.''

 In the Taylor case, the defendant husband a dentist, was required to pay alimony in solido to the extent of his ability so to do, and in addition, alimony in futuro in the amount of approximately one-third of his income. In the case at bar, the most valuable property owned by the complainant and defendant was awarded to complainant as ailmony; but it must be remembered that, as the title was held as tenants by the entireties, she already owned one half of it. In addition, no alimony in futuro was decreed in the instant case, and complainant was required to pay certain indebtednesses, including those encumbering the property conveyed to her, and to bear the expense of her own attorney's fees. According to the values contended for by counsel for appellant, the defendant's interest in the property conveyed to complainant as alimony was $18,-750, and the value of that which he was permitted to retain was $7,800. No alimony in futuro was decreed against defendant.

Under all the facts and circumstances of the instant case, and considering the respective ages of the parties, he being 44 and she being 42, we cannot say that an inequitable result has been reached. All of the assignments of error will be overruled, and a decree may be entered in this Court affirming the decree of the lower court, after which, this cause will be remanded to the Chancery Court of Benton County, Tennessee for enforcement and supervision of same. The costs of the appeal will be paid by the appellant and the surety on his appeal bond.

Avery, P. J. (W.S.), and Carney, J., concur.