# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 9, 2007 Session

## FARRELL NESBITT V. PAULA NESBITT

**Appeal from the Fourth Circuit Court for Davidson County**
**No. 05D-3285    Muriel J. Robinson, Judge.**

_____

**No. M2007-00176-COA-R3-CV - Filed February 4, 2008**

_____

This appeal arises from a dispute regarding the trial court's award of alimony *in futuro* to Paula Nesbitt.  The trial court granted the parties' divorce, pursuant to Tennessee Code Annotated § 36-4-129, and ultimately awarded the divorce to the wife because the husband appeared to be at greater fault on the grounds of inappropriate marital conduct.  Farrell Nesbitt challenges the trial court's alimony *in futuro* award, arguing rehabilitative alimony was the proper award.  We affirm the trial court's ruling.  Costs of this appeal shall be assessed to the appellant, Ferrell Nesbitt.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DON R. ASH, SP.J., delivered the opinion of the court, in which Patricia J. Cottrell, P.J. and Andy D. Bennett, J., joined.

Lorraine Wade, Nashville, Tennessee, for the appellant, Farrell Nesbitt.

Tusca R. S. Alexis, Nashville, Tennessee, for the appellee, Paula Nesbitt.

**OPINION**

## STANDARD OF REVIEW

Rule 13(d) of the Tennessee Rules of Appellate Procedure dictates the appellate review of factual findings by the trial court shall be de novo upon the record of the trial court coupled with the presumption of correctness of the findings, unless a preponderance of the evidence is otherwise. If the trial court states no finding of fact for a determinative factor, the appellate court must conduct its "own independent review of the record to determine where the preponderance of the evidence lies." Crabtree v. Crabtree, 16 S.W.3d 356, 360 (Tenn. 2000) (citing Brooks v. Brooks, 992 S.W.2d 403, 405 (Tenn. 1999). Questions of law are afforded de novo review, without any presumption of correctness. Burlew v. Burlew, 40 S.W.3d 465, 470 (Tenn. 2001). Trial courts are afforded discretion in their decisions regarding the nature, time duration, and amount of alimony awards; therefore, but for an abuse of discretion, the trial court's amount of award will survive appellate review. Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

## FACTS

Appellant, Farrell Nesbitt ("Mr. Nesbitt"), and Appellee, Paula Nesbitt ("Ms. Nesbitt"), married November 3, 1988, or November 5, 1989,[1] in Davidson County, Tennessee. Both parties were born in 1958. No children were born from the marriage.[2]

Ms. Nesbitt has consistently worked since the age of thirteen, and she is a high school graduate. Throughout her working career, she has been an hourly wage earner. Past employment includes work as a corn de-tasseler, a nurses' aide, a sand blaster, and a pick packer. Ms. Nesbitt's lifetime wages have ranged from $7.00 to $16.00 per hour. At the time of the divorce proceeding and appellate hearings, she worked as a cafeteria assistant with the Davidson County Metropolitan Schools, during the school year, earning $10.34 per hour. She worked throughout the marriage, except for approximately a year in 2003, in which she suffered from a staph infection. Ms. Nesbitt testified she cooked meals and did chores for the marital household.

Mr. Nesbitt also worked throughout the marriage. Nissan has been his employer for sixteen years. At this job, Nissan provided training for his position as a general laborer.[3] The United States National Guard has also employed him for twenty-eight years. His earnings vary, depending on whether he is on active duty. The record is void of the husband's education level and past work experience. Reported adjusted gross income for 2003 was $62,848; for 2002 was $62,896; and for 2001 was $60,321.

---

[1.] In their opening statements, the parties argue different dates for the marriage of the parties.

[2.] Ms. Nesbitt has children from a previous marriage who have already reached the age of majority.

[3.] Based upon a review of the transcript, Mr. Nesbitt's exact title and job duties at Nissan are unknown.

The record indicates the parties have various joint property.[4] The parties have a marital home, a Nissan pathfinder, a 1976 Chevy Truck, real property, household property, and furniture, and various 401K, pension, IRA, and retirement accounts.

Mr. Nesbitt filed for divorce September 9, 2005 alleging irreconcilable differences and inappropriate marital conduct. Ms. Nesbitt filed an Answer and Counter-Complaint for divorce alleging inappropriate marital conduct, adultery, cruel and inhuman treatment, and irreconcilable differences. In an Amended Complaint, Ms. Nesbitt additionally prayed for divorce alleging habitual drunkenness and abandonment. Mr. Nesbitt filed no Answer.

The Fourth Circuit Court in Davidson County held a hearing for divorce of the parties on October 11, 2006. Judge Robinson ordered the parties divorced, and awarded the divorce to the wife on the grounds of inappropriate marital conduct by the husband. The Court further ordered Mr. Nesbitt pay alimony to Ms. Nesbitt in the sum of $750.00 per month, beginning November 1, 2006, extending for the period of her lifetime. It is from this award of alimony *in futuro* Mr. Nesbitt appeals.

## ISSUES

The following issue is the sole issue before the court: Whether the trial court erred in its $750.00 per month alimony *in futuro* award to Ms. Nesbitt?[5]

## ANALYSIS

This case presents the court with the opportunity to examine the delicate, yet common, situation of an alimony award. Alimony was designed to aid an economically disadvantaged spouse after divorce. Alimony awards are structured on a case-by-case basis, tailored to address specific needs. The award can be a lump sum award, alimony in solido; for an indefinite period, alimony *in futuro;* for a specific time period, transitional alimony; or temporary to achieve specific goals, rehabilitative alimony. Tenn. Code Ann. § 36-5-121 (2005).

---

[4] The extent of this appeal is for purposes of alimony only. The trial court ordered the marital residence to be sold and all proceeds awarded to the wife, free and clear of the claim of the husband. Mr. Nesbitt was to continue making the payments on the mortgage until sale of the home, and upon sale, he will be reimbursed one-half of the note he pays subsequent to November 1, 2006. The trial court awarded Ms. Nesbitt household furnishings and furniture, except for the family Bible and an antique mirror, which were Mr. Nesbitt's family heirlooms. Each party retains his and her automobile. The court allowed Mr. Nesbitt to keep the proceeds he received from the sale of the boat and lawn equipment. Pensions, IRAs, retirements, and 401(k)s are divided between Mr. and Mrs. Nesbitt equally.

[5] The issue before this court is limited to the alimony dispute, therefore, this court will not address the trial court's award of divorce to the wife or the division of assets.

Alimony has paralleled gender roles' evolution. Historically, courts viewed alimony as an extension of the husband's contractual duty to care for his wife, and courts only awarded alimony to the wife if she was innocent of wrongdoing and could prove need. See Rush v. Rush, 232 S.W.2d 333, 336 (1949); Gary H. Nichols, *Covenant Marriage: Should Tennessee Join the Noble Experiment?*, 29 U. Mem. L. Rev. 397, 427 (Winter 1999). The alimony award was not available to the husband at that time because the wife had no contractual duty to provide for her husband. Janet L. Richards, Richards on Tennessee Family Law, Sections § 12-3 (Supp. 2000). Alimony awards were once described as "an allowance out of the estate of the husband made *pendente lite* for the maintenance of the wife, or for the sustenance of the wife after legal separation or divorce." See White v. Bates, 89 Tenn. 570, 572 (Tenn. 1890). As gender roles equalized, the United States Supreme Court held limiting awards only to wives did not withstand strict scrutiny, thus alimony became a viable award to either spouse on a fault basis. Orr v. Orr, 440 U.S. 268 (1979). Eventually, courts began awarding alimony to either spouse, regardless their sex, and emphasizing self-support to each of the parties. See Self v. Self, 861 S.W.2d 360 (Tenn. 1993). Tennessee legislators viewed alimony's purpose to "encourage divorced spouses to become self-sufficient." Tenn. Code Ann. § 36-5-121 (2005); Crabtree v. Crabtree, 16 S.W.3d at 359-60 (Tenn. 2000). This type of temporary alimony is referenced as rehabilitative alimony, which is now codified in Tennessee Code Annotated § 36-5-121.

Legislators have been explicit with their intentions regarding the purpose of today's alimony awards. See Tenn. Code Ann. § 36-5-121 (2005). In cases in which a spouse is economically disadvantaged, T.C.A. § 36-5-121(d)(2) provides guidance. In this section, it states, "it is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative alimony." Tenn. Code Ann. § 36-5-121(d)(2) (2005). Because of legislators' explicit preference for rehabilitative alimony, the Tennessee Supreme Court advises courts to award alimony *in futuro* only when long-term support is necessary and rehabilitation cannot be achieved. Tenn. Code Ann. § 36-5-121(d)(3) (2005); Crabtree, 16 S.W.3d at 359. Richards on Tennessee Family Law distinguishes rehabilitative support from *in futuro* support stating, "[r]ehabilitative support is designed to accomplish a stated result within a limited time, while *in futuro* support continues the support that was incident to the marriage relationship." Janet L. Richards, Richards on Tennessee Family Law, Sections § 12-3 (Supp. 2000).

Courts should determine whether an alimony award is even necessary before considering whether rehabilitative or *in futuro* alimony is appropriate.[6] It is important to keep in mind "[a]limony is not and never has been intended by the legislature to be punitive; nor was it intended simply as an award for virtue. It is not designed to serve as an annuity for the wife, nor to care for the wife's needs after divorce or provide her with a life-time profit-sharing plan." Lindsey v. Lindsey, 976 S.W.2d 175 (Tenn. Ct. App. 1997). To determine whether to grant support, courts may consider any factor; however, courts must consider several statutory factors. Tenn. Code Ann. § 36-5-121(i) (2005). The mandatory considerations are:

---

6

 This appeal is limited to rehabilitative and *in futuro* alimony. The Court recognizes the third and fourth types of alimony, alimony in solido and transitional alimony, but will not discuss them because of their inapplicability to this case.

1. Relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

2. Relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

3. Duration of the marriage;

4. Age and mental condition of each party;

5. Physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

6. Extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

7. Separate assets of each party, both real and personal, tangible and intangible;

8. Provisions made with regard to the marital property;

9. Standard of living of the parties established during the marriage;

10. Extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

11. Relative fault of the parties, in the court's discretion; and

12. Other factors, including tax consequences, as necessary to consider the equities between the parties. Tenn. Code Ann. § 36-5-101(d) (2005).

Each of the factors should be considered, if relevant to the facts, but the most important determinations should rest upon the demonstrated need and the obligor spouse's ability to pay. Anderton v. Anderton, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998). The dependent spouse has the duty to present evidence for need and each of these factors; the independent spouse *should* present evidence to rebut the same. Janet L. Richards, Richards on Tennessee Family Law, Sections § 12-3 (Supp. 2000) (emphasis added). If the court concludes one spouse is economically dependent upon the other, and the court concludes alimony is necessary, the court should proceed to the rehabilitation versus *in futuro* analysis.

In this case, the trial court made no specific findings of fact regarding its decision to award alimony to Ms. Nesbitt. However, the parties apparently do not dispute the award of alimony, rather they dispute the form of the alimony award. Even so, it is this Court's duty to

review the finding de novo, and determine where the preponderance of the evidence lies. In its limited address to the matter, the court said, "this is definitely an alimony case," and we agree. The record indicates Mr. Nesbitt has been the primary wage earner of the household, making over $60,000, while his wife has graduated from no more than $16.00 per hour in her entire life. Considering Ms. Nesbitt's age, her work history, her lack of skill, and most importantly, Mr. Nesbitt's ability to pay, this court does not find that the evidence preponderates against the ruling for an alimony award.

To assess the nature of spousal support, courts shall consider the same twelve statutory criteria considered when deciding whether to award spousal support, focusing on ability to self-support and rehabilitate. Tenn. Code Ann. § 36-5-121(i) (2005); see Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995). The court should first determine whether rehabilitative alimony is practical. In the alimony statute, the legislature reiterates Tennessee public policy stating,

> It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.
> . . .
> Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(c). Rehabilitation is defined by the marital standard of living, meaning "to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse." Tenn. Code Ann. § 36-5-121(e)(1) (2005). Rehabilitation is achieved through re-education and retraining, and the alimony is a means to support the economically disadvantaged spouse through this period.

Courts have struggled and varied in their holdings regarding whether a spouse can be rehabilitated. Consistently, however, courts look to the dependent spouse's education, employment history, age, health, and marital standard of living, keeping in mind cases in which the pre-divorce, marital standard of living is not economically feasible post-divorce, the effort is to achieve the ex-spouse's post-divorce standard of living. See Melvin v. Johnson-Melvin, 2006 LEXIS 274, No. M2004-02106-COA-R3-CV (Tenn. App. 2006) (stating the disadvantaged wife could still achieve a comparable lifestyle to that of the husband after divorce, because she was capable of rehabilitation even with her disease); Walker v. Walker, 2006 LEXIS 315, No. M2005-01561-COA-R3-CV (Tenn. App. 2006) (finding the disadvantaged wife could be rehabilitated in five years because her youngest child would reach the age of majority in a year, she admitted to having no physical or mental infirmities, and she needed only two years education to become an ultrasound technician); Eganey v. Eganey, 2006 LEXIS 809, No. M2005-01755-COA-R3-CV (Tenn. App. 2006) (examining the parties' earning capacities pre-

and post-divorce finding the husband had an earning capacity of $120.00 per hour due to his education, skill, and experience, and the wife, earning $15.00 per hour, could not achieve, with reasonable effort, an earning capacity that would allow her a comparable living to that of her husband's pre- or post-divorce).

If, after consideration of all the dependent spouse's circumstances, the court determines that the spouse's education, employment history, and standard of living during the marriage will not allow that spouse to maintain a standard of living comparable to that he or she maintained pre-divorce, *or* a standard of living comparable to the post-divorce standard of living of the other spouse, the court should award long-term spousal support in the form of *in futuro* alimony. Tenn. Code Ann. § 36-5-121(d)(3) (2005); Burlew v. Burlew, 40 S.W.3d 465, 468 (Tenn. 2000). This type of alimony terminates only on the dependent spouse's death or re-marriage. While there is an explicit legislative intent for rehabilitative alimony, courts should not dismiss the option of long-term spousal support. In Anderton, the Tennessee Court of Appeals reminded courts "the statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support." 988 S.W.2d at 682.

Once the nature, or form, of alimony is determined, courts should determine the amount, length of term, and manner of payment. The Tennessee Supreme Court in Aaron, provided several guiding principles, in addition to T.C.A. section 36-5-121(i)'s statutory criteria:

1. The real need of the spouse seeking the support is the single most important factor;
2. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support;
3. Further, the amount of alimony should be determined so that the party obtaining the divorce is not left in a worse financial position than he or she had before the opposite party's misconduct brought about the divorce; and
4. While alimony is not intended to provide a former spouse with relative financial ease, we stress that alimony should be awarded in such a way that the spouses approach equity.

909 S.W.2d at 410 (citing Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989) and Shackleford v. Shackleford, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1981)).

In this case, the trial court heard testimony and argument at the alimony hearing between Mr. and Ms. Nesbitt. Unless the preponderance of the evidence so establishes otherwise, this Court will defer to the trial court's finding of facts. Where no finding of fact is stated within the record regarding one of the factors, this court will review such factor de novo from evidence within the record and determine where the presumption of correctness lies. Lastly, this Court will review the amount of the alimony award under an abuse of discretion standard. We will discuss each of the mandatory, statutory factors in turn.

**A.** *Relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources.*

The trial court stated in its findings "there is no way from any proof . . . that Ms. Nesbitt can ever command the salary that Mr. Nesbitt does. . . . The proof shows that the husband makes almost six times the money she does. He's been the sole support of the family." According to Ms. Nesbitt's income and expense statement, she has a deficit of $1003.95 each month while Mr. Nesbitt makes approximately $62,000 a year. This Court finds the evidence supports the trial court's finding Mr. Nesbitt makes almost six times than that Ms. Nesbitt does.

**B.** *Relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level.*

The trial court stated in its findings "she is not skilled. She can only work hourly jobs. She's working as . . . a cafeteria aide at Metro where she's only paid eight months a year. . . . There is no foreseeable way at all . . . that she can ever be able to be skilled enough to make anywhere near her husband makes. She is in need of the alimony. He has the ability to support." The record states that Nissan trained Mr. Nesbitt for his job. No other education is mentioned. This Court finds there is no preponderance of evidence to controvert the trial court's finding that Ms. Nesbitt has only a high school education while Mr. Nesbitt has received at least on-the-job training through Nissan and the military.

**C.** *Duration of the marriage.*

The trial court properly found "this is a marriage of long duration." The parties presented conflicting dates, 1988 and 1989, as to when they were married. Regardless the exact year, this court finds the evidence lies with the finding the marriage was for a long duration, for approximately seventeen or eighteen years.

**D.** *Age and mental condition of each party.*

The trial court did not specifically state in its findings the age and mental condition of the parties. However, this Court finds that the record is clear the parties are forty-eight. No specifics were made regarding the mental condition of each party, but this Court finds from the record that each is in good mental condition.

**E.** *Physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease.*

The trial court made no specific statements of fact regarding the physical conditions of each party. After de novo review of the record, this Court finds that each party is in good health. While there is evidence to show Ms. Nesbitt was once gravely ill with a staph infection, this Court finds that the evidence presented shows Ms. Nesbitt has returned to work and lives routinely.

**F.** *Extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage.*

The trial court did not make any statements of fact regarding this mandatory factor. Upon de novo review, this Court finds that there is evidence to show the parties had no children from this marriage, and Ms. Nesbitt's children from a prior relationship have reached age of majority.

**G.** *Separate assets of each party, both real and personal, tangible and intangible.*

The trial court did not make any reference to separate assets of each party. This Court finds, via de novo review of the record, the parties held all their property as marital property.

**H.** *Provisions made with regard to the marital property.*

The trial court ordered the martial home to be sold and awarded the equity to Ms. Nesbitt. The mortgage payments were to be paid by Mr. Nesbitt until the home is sold. Upon sale, the proceeds should be used to reimburse one-half of Mr. Nesbitt's mortgage payments made after November 1, 2006. The trial court awarded the furniture and household goods to Ms. Nesbitt, except the family <u>Bible</u> and an antique mirror, which were awarded to Mr. Nesbitt. Each party was awarded their vehicle. The trial court awarded Mr. Nesbitt the proceeds of the sale of the boat and the lawn equipment. The pensions, retirement, IRAs, and the 401Ks were divided 50/50. This Court finds the preponderance of the evidence supports the trial court's division of the marital property.

**I.** *Standard of living of the parties established during the marriage.*

The trial court made no specific statements regarding the standard of living established during the marriage. This Court finds the evidence in the record establishes the wife as the primary homemaker and the husband as a successful laborer at Nissan.

**J.** *Extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party.*

No direct findings of fact were made regarding either party's contributions to the marriage. Through de novo review, this Court finds Ms. Nesbitt contributed to the marriage through her household chores, cooking meals, and her various employment, except for one year of the marriage when she was ill. The only evidence of Mr. Nesbitt's contributions to the marriage was his earnings from Nissan and the military.

**K.** *Relative fault of the parties, in the court's discretion*

The trial court stated in its findings it granted the divorce to Ms. Nesbitt because it found Mr. Nesbitt in greater fault on grounds of inappropriate marital conduct. This Court finds that upon review of the record, the preponderance of the evidence supports the trial court's grant of the divorce to the wife. The record indicates Mr. Nesbitt had domestic issues with Ms. Nesbitt's son and the weight of the testimony was that Mr. Nesbitt drank heavily.

**L.** *Other factors, including tax consequences, as necessary to consider the equities between the parties.*

The trial court made no direct statements of fact regarding any tax consequences. This Court finds, under de novo review, there was no evidence of tax consequences to either party.

This Court affirms the trial court's award of *in futuro* alimony to Ms. Nesbitt. The weight of the evidence in the record supports the categorization of Ms. Nesbitt as an unskilled, hourly wage earner. The preponderance of the evidence is the wife graduated high school, but never received further education or training, other than on the job training, to elevate her outside hourly wage jobs. Ms. Nesbitt attended to the household chores, cooked and cleaned for her husband, further evidencing she has not sought or attained more education, training, or skills. This Court also believes Ms. Nesbitt contributed to Mr. Nesbitt's success so that he accomplished a greater earning capacity than his wife. This Court is of the opinion the preponderance of the evidence shows Ms. Nesbitt has a great need for support and no evidence is within the record that Ms. Nesbitt can promote herself to earn more than minimum wage. Therefore, this Court affirms the trial court's conclusions Ms. Nesbitt cannot be rehabilitated to a standard of living comparable to the post-divorce standard of living of that of Mr. Nesbitt.

In regards to the amount of the *in futuro* alimony award, this Court finds the trial court did not abuse its discretion. The real need of the Ms. Nesbitt is evidenced by her $1003.95 per month deficit coupled with her inability to elevate herself out of hourly wages. In addition to her need, Mr. Nesbitt's approximate $62,000 annual salary evidences his ability provide support. Considering the party obtaining the divorce is not left in a worse financial position than she had before the divorce, the preponderance of the evidence supports the trial court's conclusion $750.00 is sufficient to supplement her salary to allow her to reasonably resume her standard of living. This court believes $750.00 per month *in futuro* alimony is a most equitable solution. This Court finds the weight of the evidence proves the trial court did not abuse its discretion in choosing the amount of the alimony award.

### Conclusion

        We hold the preponderance of the evidence supports the trial court's award of alimony *in futuro* to Ms. Nesbitt.  We also affirm the trial court's $750.00 per month alimony award because the evidence indicates Ms. Nesbitt needs long-term spousal support because she, at her age, cannot receive the training education, and skills necessary to work a job other than her life-long, hourly-wage earning job.  The evidence shows Ms. Nesbitt cannot be rehabilitated to earn a standard of living after the divorce reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to Mr. Nesbitt.  As such, the trial court is affirmed, and costs of this appeal are to be assessed to the appellant, Ferrell Nesbitt.

_____

DON R. ASH, S.J.