DELLA ANN CROUCH, Complainant-Appellee, v.
W. L. CROUCH, Defendant-Appellant.—385 S. W.
(2d) 288.

Middle Section, at Nashville. July 31, 1964.

Certiorari Denied by Supreme Court December 11, 1964.

Bryson & Bryson, Woodbury, W. G. McDonough, McMinnville, for appellant.

Foutch & LeFevre, Smithville, Haston & Haston, McMinnville, for appellee.

CHATTIN, J. This is a divorce suit. The cause was tried before the Honorable Robert S. Brady, Circuit Judge for Warren County, Tennessee, on oral testimony.

During the trial of the case it developed the parties had been previously married prior to their marriage on November 22, 1943. Each had a child by their previous marriages. As a result of their marriage they have one son, Bobby Lee. On the day of their marriage they entered into an antenuptial agreement. The contract had been mutilated by rats. Complainant insisted the agreement provided in the event of a divorce she was to receive one-half of all the property of the defendant over and above the sum of $6,000.00. The defendant insisted the contract provided she was to receive six per cent of defendant's net worth not to exceed $6,000.00 plus an Attorney's fee of $150.00 and court costs as a property settlement in the event of a divorce.

The court heard the matter on January 25, 1963, and granted complainant, Della Ann Crouch, an absolute divorce on the ground of cruel and inhuman treatment. The trial judge took the question of the validity of the antenuptial agreement and the matter of alimony under advisement. On February 14, 1963, an order of reference was ordered appointing a special commissioner and directing him to hear proof and report the net value of defendant's property, real and personal.

The special master reported defendant had a net worth

of $163,446.75 over and above property owned by the parties by the entireties of the value of $13,640.00.

Exceptions to the report were filed by the defendant. The trial judge overruled the exceptions and held the antenuptial agreement was not binding on the court in fixing the amount of alimony and Attorney's fee.

Accordingly, a decree was entered in which the complainant was awarded certain items of household and kitchen furniture, the sum of $50,000.00 in cash or, in lieu thereof, real estate to the value of $50,000.00, a cemetery lot and a fee of $10,000.00 to her Attorneys. The defendant elected to pay into court the sum of $60,-000.00 to cover the alimony, Attorneys' fee and costs rather than have the real estate divided between the parties.

Defendant has appealed to this Court and assigned eleven assignments of error.

The first three assignments have for their basis there is no material evidence in the record to support the decree for an absolute divorce and, in fact, the evidence preponderates against the decree.

■ This Court tries a divorce case on appeal de novo. But there is a presumption of the correctness of the decree of the trial court unless we find the evidence preponderates against the finding of the court below. T.C.A. sec. 27-303.

From a review of the record, we find the evidence on behalf of complainant is to the effect in March of 1962 complainant was scheduled to have an operation. Defendant told complainant he would see her through the operation but was going to divorce her thereafter. That about

the same time he accused her and her doctor of getting rid of their baby in 1947 at which time she had a miscarriage. In 1948 complainant gave birth to a stillborn child. In December of 1962 defendant denied the paternity of that child to her.

On an occasion in 1961, while defendant and complainant were on their way to his mother's home, he accused her of going with other men. She denied the accusation. He called her a liar, pulled her hair and threatened to "stomp" her.

About four years prior to her testimony, he accused her of meeting a man on the highway between Shelbyville and McMinnville. Defendant has refused to let her drive their car since that time. During these years he has cursed her for going to church because of her unfaithfulness to her marriage vows. Defendant would refuse to discuss their marriage problems. She became highly nervous from his treatment of her and was forced to take medication to sooth her nerves.

In January, 1962, she had an operation for gallstones. When she returned home from the hospital, he again accused her of destroying their baby in 1947. His accusation of her unfaithfulness continued until August 30, 1962, when she was forced to withdraw.

Henry Elbert Young, the Minister of her church, testified the defendant on several occasions, after the divorce bill was filed, told him complainant was interested in other men.

Bessie B. Holland, a cousin of defendant, stated defendant had tried to get her to say complainant had been with a man by the name of Griffith.

Carl Stanley, complainant's son-in-law, testified complainant had been without the use of a car for some time.

Defendant denied both the testimony of complainant and her witnesses.

Bobby Crouch, the son of the parties, testified he had never heard his father accuse complainant of going with other men. Nor had he heard him curse his mother.

■ Where, as in this case, the determination of the issues of fact depends largely upon the credibility of the two adversary parties and the case is tried upon oral testimony, the findings of the trial judge are entitled to great weight since he saw the witnesses face to face and heard them testify. This is true because he was in a much better position than we are to judge the value of their evidence. Clardy v. Clardy, 23 Tenn.App. 608, 136 S.W. (2d) 526; Roberts v. Ray, 45 Tenn.App. 280, 322 S.W. (2d) 435.

■ If the testimony of complainant is true, the trial judge did not err in granting her an absolute divorce on the ground of cruel and inhuman treatment. Garvey v. Garvey, 29 Tenn.App. 291, 203 S.W. (2d) 912; Meeks v. Meeks, 27 Tenn.App. 279, 179 S.W.(2d) 189.

From the foregoing resume of the evidence, and in the light of the foregoing rules which govern us, we are unable to say the evidence preponderates against the findings of the trial judge.

We accordingly, overrule these assignments.

Defendant's fifth and sixth assignments complain of the action of the trial court in overruling his exceptions to the report of the special master.

■ In considering these assignments, we are bound by the rule a concurrent finding by the master and the trial court is conclusive on appeal, unless the finding be on an issue not proper to be referred, or is based on an error of law, or on mixed law and fact, or is not supported by any material evidence. Evans v. Boggs, 35 Tenn.App. 354, 245 S.W.(2d) 641; Black v. Love and Amos Coal Company, 30 Tenn.App. 377, 206 S.W.(2d) 432.

These assignments present only the question of whether there is any material evidence to support the findings of the special master.

The first item complained of is the value placed on a 258 acre tract of land in Cannon County owned by the defendant. The master placed a value of $5,160.00 or $20.00 an acre on the property.

The record shows one witness testified the property was worth $7.50 an acre, another valued the land at $30.00, and a third valued the property from $20.00 to $25.00 an acre.

■ Thus, there is material evidence to support the finding of the master and we overrule defendant's fifth assignment.

The sixth assignment complains of the master's evaluation of the interest of defendant in the business of Crouch Builders Hardware, a partnership owned by defendant and his son; the finding of the master that the son was indebted to defendant in the sum of $22,859.06; the finding of the master the defendant had approximately $40,000.00 in cash; and the finding that an amount withdrawn from the Murfreesboro Savings & Loan As-

sociation of $30,765.74, which account was in the name of W. L. Crouch, Trustee for Bobby Lee Crouch, was in fact the property of defendant.

The record shows that on January 7, 1961, defendant sold a one-half interest in the Crouch Builders Hardware to his son for $40,000.00. The son executed a note to defendant for this amount. The agreement between the parties provided the son's share of the net profits of the business each year would be credited on the note. The note shows credits of $6,685.98 and $7,638.48 as the son's share of the net profits of the business for the years 1960 and 1961, respectively.

There is filed in the record the income tax returns for the business for the years 1961 and 1962, which show the net income of the business for those years to be $22,761.36 and $11,520.66, respectively.

By stipulation of the parties the assets of the business were shown to amount to the sum of $27,497.01. The liabilities of the business amounted to $10,602.31 evidenced by a note payable to the First National Bank of McMinnville.

It is evident the master found the defendant's interest in the business to be $40,000.00 from the sale of the one-half interest to his son for that amount. Although we think the fact the father sold the interest to his son for such an amount and the showing of the net profits of the business for the years 1961 and 1962 would be material proof to support the master's finding, yet we are of the opinion this amount should be reduced by one-half of the liability of the business which would reduce the master's finding on this item to $34,698.85.

602

At to the indebtedness of $22,859.60 of the son to defendant, the record shows this obligation to be a balance on the note in the sum of $40,000.00 executed by the son to the father for his interest in the father's business. The note was marked paid by the father on March 25, 1962. However, neither the father nor the son could give a satisfactory explanation of how the son paid this balance as of that date. The father was very evasive in his answers to questions concerning the payment of this balance. In view of the fact the agreement provided the son was to pay the note from his share of the net profits from the business yearly and there being no proof the son had other means of paying the indebtedness, we think the master was justified in finding the indebtedness had not in fact been paid.

As to the master's finding the defendant had $40,000.00 in cash, the proof shows this item to consist of withdrawals of $1,218.54 and $30,765.74 by the defendant from the Murfreesboro Savings & Loan Association on January 2, 1962, and September 4, 1962, respectively, and a banking account of $7,012.85 in the First National Bank of McMinnville.

It is insisted by the defendant the item of $30,765.74 was his son's money and there is no proof to support the master's finding this money was in fact the property of defendant.

█ The record shows that on March 31, 1959, defendant withdrew $20,706.00 from his savings account in the Murfreesboro Savings & Loan Association and on the same day redeposited the same in the name of W. L. Crouch, Trustee for Bobby Lee Crouch. The record further shows this amount by additional deposits by de-

fendant and accumulations by virtue of dividends grew to the sum of $30,765.74. The record is silent as to what became of this money. This money was withdrawn a few days after complainant filed the original bill in the case. Defendant did not offer any explanation for its withdrawal. Accordingly, we think the master was justified in finding this money belonged to defendant.

As to the withdrawal of the sum of $1,218.54 in January, 1962, we do not think the master was justified in charging this amount to defendant. The only proof as to this item is the fact of its withdrawal. The parties were still living together at that time. The record is silent as to why this money was withdrawn.

Accordingly, we sustain defendant's sixth assignment as to the two items of $5,301.15 or one-half of the indebtedness of the business due the Bank and the item of $1,218.54 withdrawn from the savings account. When these items are substracted from the master's finding of the total estate of defendant it will leave an estate of approximately $163,000.00.

Defendant's fourth and ninth assignments of error complain of the action of the trial judge in holding the antenuptial agreement of the parties was void and not binding on the court in decreeing alimony.

In support of these assignments, defendant relies on the general rule that antenuptial property settlements are favored by public policy, and cites the following cases as authority for the general rule: Sanders v. Sanders, 40 Tenn.App. 20, 288 S.W.(2d) 473, 57 A.L.R.(2d) 932; Key v. Collins, 145 Tenn. 106, 236 S.W. 3; Killebrew v. Killibrew, 24 Tenn.App. 24, 137 S.W.(2d) 953; Hoyt v. Hoyt, 213 Tenn. 117, 372 S.W.(2d) 300.

But we cannot agree. We have carefully considered those cases and find they are not in point on the question presented in the instant case. The question, we think, in the case at bar is whether an antenuptial contract limiting the liability of the husband for alimony in case of a divorce is valid.

The general rule as to such contract is stated in 17 Am.Jur., Divorce and Separation, Section 16, page 267.

"It may be stated as a general rule that any antenuptial contract which provides for, facilitates, or tends to induce, a separation or divorce of the parties after marriage, is contrary to public policy, and is therefore void. It has often been held that an antenuptial agreement limiting the liability of the husband to the wife for alimony, or fixing the property rights of the parties, in the event of a separation or divorce, is void."

As hereinbefore stated, the contract became mutilated and the trial court permitted the parties to state their respective interpretations of the provisions of the contract. The defendant testified the contract provided in case of a divorce he would not be liable for more than $6,000.00 plus an Attorney's fee of $150.00 as alimony.

We are of the opinion such contract is promotive of divorce and void on grounds of public policy. Such contract could induce a mercenary husband to inflict on his wife any wrong he might desire with the knowledge his pecuniary liability would be limited. In other words, a husband could through abuse and ill treatment of his wife force her to bring an action for divorce and thereby buy a divorce for a sum far less than he would otherwise have to pay.

Although the complainant testified the provision of the contract was more liberal than testified to by the defendant and that she voluntarily signed the contract after much discussion of its contents with defendant, yet she does not complain of the trial judge's action in not following her version in awarding alimony.

Thus, she has waived her right to rely on her interpretation of the contract. However, assuming it was necessary for us to place a construction on the contract, we are of the opinion we would have to accept complainant's insistence since the record shows her testimony to be more credible than that of the defendant.

We overrule these assignments.

Assignments seven and eight have as their basis the excessiveness of the alimony and Attorney's fee.

The amount of alimony and Counsel fees to be awarded in a divorce suit is largely in the discretion of the trial judge and the appellate courts will not interfere except upon a clear showing of abuse of such discretion.

In the case of Rush v. Rush, 33 Tenn.App. 496, 232 S.W.(2d) 333, it is said:

"Alimony is allowed in recognition of the husband's common law liability to support the wife. The amount is in the sound discretion of the judge or chancellor and his action will not be disturbed except in a clear case of abuse of that discretion, Walden v. Walden, supra (13 Tenn.App. 337, 344). No hard or fast rule can be laid down for the determination of the amount of the award or the form which it takes, and there has been no attempt in the adjudicated cases to do so. The facts and circumstances in each particular case must

govern. While it has been said that where the award is in solido it is not usual to allow more than half of the husband's estate after making deductions for his indebtedness. Stillman v. Stillman, 66 Tenn. 169, the authority of the court to award all or any part of the husband's estate according to the particular facts or circumstances has been recognized. Boggers v. Boggers, 65 Tenn. 299.

"In Williams v. Williams, 146 Tenn. 38, 44, 236 S.W. 938, 940, the court makes this pertinent statement: 'The husband owes the duty to his wife of rendering to her suitable support without reference to her financial condition. He ought not to be allowed to escape the performance of that duty by affording his wife cause for separation and placing her in a financial situation worse than it was before his misconduct brought about a legal separation.' "

Likewise, the allowance of Counsel fees is largely in the discretion of the trial judge. In the case of Riley v. Riley, 9 Tenn.App. 643, this Court said:

"The fee to be paid to the plaintiff's attorney by the defendant in a divorce case, where the wife successfully prosecutes a suit for divorce against her husband, is treated in Tennessee as part of the expenses incident to the cause and allowed as alimony. Winslow v. Winslow, 133 Tenn. 663, 671 (182 S.W. 241); Shy v. Shy, 7 Heisk. 125.

"An attorney's fee, amounting to ten per cent (10%) or more of the value of the alimony recovered for a wife in the successful prosecution of a divorce suit, is a proper fee to be allowed and paid to her attorney. Winslow v. Winslow, 133 Tenn. 663 (182

S.W. 241); McBee v. McBee, 1 Heisk. 558; Bailey v. Bailey, 6 Tenn.App. 272.

"The rule in Tennessee on the question of allowance of attorney's fees by the nisi prius courts is that the allowance made will not be interfered with by appellate courts, unless some injustice has been perpetrated, such matters being largely within the discretion of the lower courts. Holston Bank v. Wood, 125 Tenn. 6 (140 S.W. 31); Bank of Commerce & Trust Co. v. Buckingham, 144 Tenn. 344, (233 S.W. 668)."

▆▆▆ We are satisfied from the record before us the trial court did not abuse his discretion in his award of alimony and Counsel fees in the case.

Hence, we overrule these assignments.

▆▆▆ We think defendant's tenth assignment is without merit and overrule it. This assignment states the trial judge was in error in requiring defendant to pay into court the sum of $60,000.00 to cover the award of alimony and Attorney's fees, instead of permitting defendant to execute a bond for such amount. But, as we understand the decree, defendant elected to take this course in lieu of having the court make a division of the real estate.

Defendant's eleventh assignment complains of the action of the trial judge in allowing the Attorneys to collect their fee prior to the final disposition of the case in the appellate courts.

It is argued in support of this assignment the trial judge should not have permitted the fee to have been paid until the final disposition of the case in the appellate courts.

608

■ We think this was a matter of discretion with the court. We know the Attorneys for complainant are honorable men and should it become necessary for them to make an adjustment, we are sure such can be done.

It results the decree of the court below is affirmed with costs.

Shriver and Humphreys, JJ., concur.