# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

ANN ELIZABETH DUDENHOEFFER,    )
                               )
    Plaintiff/Appellee,    ) **Madison Chancery No. 49454**
                               )
VS.                            ) **Appeal No. 02A01-9607-CH-00160**
                               )
GEORGE DANIEL DUDENHOEFFER,    )
                               )
    Defendant/Appellant.    )

APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE
THE HONORABLE JOE C. MORRIS, CHANCELLOR

FILED

July 2, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

**JOHN B. LINK, III**
Nashville, Tennessee
Attorney for Appellant

**JAMES F. BUTLER**
**SPRAGINS, BARNETT, COBB & BUTLER**
Jackson, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this action for separate maintenance, the trial court awarded Ann Elizabeth

Dudenhoeffer ("Wife") a decree of separate maintenance and dismissed George Daniel Dudenhoeffer's ("Husband") counter-complaint for divorce. The trial court ordered Husband to maintain Wife as an insured on his medical insurance policy until Wife reaches age sixty-five and ordered Husband to maintain his three preexisting life insurance policies designating Wife as the sole irrevocable beneficiary. Wife was awarded the following: the marital residence, an automobile, Wife's IRA account, Husband's IRA account, one-half of Husband's retirement benefits, the remaining balance of Husband's 401-K account, a certificate of deposit, eighty-eight shares of Tenneco stock, the proceeds from a savings account, all savings bonds in Wife's possession, two burial plots, an annuity, and the parties' jointly owned personal property and household goods which Wife had in her possession. Husband was awarded the personal property which he had in his possession, a truck, a bass boat, a motor, a trailer, boating accessories, and proceeds previously withdrawn by him from his 401-K account. The trial court awarded Wife $6,638.50 as alimony *in solido* to aid Wife in paying her attorney fees and alimony *in futuro* in the following amounts:

> $2,000.00 per month beginning 10/1/95 and ending 12/31/95;
> $1,800.00 per month beginning 1/1/96 and ending 12/31/96;
> $1,500.00 per month beginning 1/1/97 and ending 12/31/98;
> $1,200.00 per month beginning 1/1/99 and ending 9/5/2001, Wife's sixty-fifth birthday;
> and $600.00 per month from 9/2001 until Wife's death or remarriage.

Husband appeals the decision of the trial court arguing that the trial court erred in awarding Wife alimony in futuro instead of rehabilitative alimony and in awarding Wife $6,638.50 as alimony in solido. For the reasons stated hereafter, we affirm the judgment of the trial court.

## FACTS

After forty-one years of marriage, Husband left Wife on March 6, 1994 for another woman. Wife was fifty-nine years of age at the time of trial, and Husband was age fifty-eight.

With the exception of brief intervals, Wife was employed outside the home throughout the entire marriage. Having only an eleventh grade education, Wife's jobs consisted primarily of receptionist and secretarial-type work. In 1959, Wife worked for the Case Company for six to eight months on a part-time basis while Husband was engaged in military service. In March 1962, Wife began working for Sears-Roebuck Company ("Sears"). Wife remained employed with Sears until October 1980. After leaving her employment with Sears, Wife went to work for Husband's newly opened business, Halls Tractor Company, whereupon Wife worked on a full time basis and was not paid a salary. Wife worked for Halls Tractor Company until it ceased to exist in July 1982. Wife's following four jobs consisted of work as an office receptionist for various professionals in the community.

Having an eighth grade education, Husband worked as a mechanic and as a salesman. Due to his position as a salesman, Husband's job required him to move frequently from place to place during the first part of the parties' marriage. Consequently, Wife made the necessary arrangements for the parties' moves and organized their new homes once the moves were completed.

Husband traveled out of town throughout the week and on many weekends due to his schedule as a salesman. Wife, therefore, maintained the home during the marriage. Wife decorated the home, mowed the lawn, planted flowers and shrubs, painted, prepared meals, laundered and pressed clothing, helped Husband with his paperwork, arranged appointments for Husband, and ran various errands for Husband. Wife also entertained Husband's family, friends and business associates.

Wife ceased working at the age of fifty-four and considers herself retired from employment outside the home. Suffering from rheumatoid arthritis, Wife testified that her arthritic condition affects her right knee, hip, elbows, forearm and wrists. Wife testified that her present living expenses total approximately $2,467.32 per month.

3

The year preceding trial, Husband's gross income totaled $56,586.00. Husband earned $54,798.64 from his work at the Gehl Company and received $404.15 per month in retirement benefits from his former employer, Case Company.[1] Husband had also accumulated $39,120.38 from his 401-K plan with the Gehl Company.[2]

At age sixty-five, Husband will receive $1,200.00 per month in Social Security benefits, and Wife will receive $600.00 per month in Social Security benefits at age sixty-five.

Husband admitted to having adulterous affairs throughout the course of the marriage. In 1978, Husband engaged in an affair with a certain woman whom Wife later discovered. Husband later moved in with this other woman for a three week period. Upon apologizing to Wife and promising that he would never again engage in an affair, Husband moved back home with Wife.

After moving back home with Wife, Husband continued his affair with the other woman. Husband continued contacting her, spent $40,000.00 on a farm for her, bought an automobile for her, paid her automobile insurance on a regular basis, and paid a moving van to move her possessions from Memphis, Tennessee to Pittsburgh, Pennsylvania. Husband twice posted a criminal bond for the other woman, although he testified that she reimbursed him for the expense of posting the bonds. Upon leaving Wife on March 6, 1994, Husband moved in with the other woman.

## LAW

The issues before this Court are as follow:

1) Whether the trial court erred in awarding Wife alimony *in futuro* in the following

---

[1]Husband worked twenty-four years for the Case Company and currently receives $404.15 per month in retirement benefits. Husband's Case Company retirement benefits accrued entirely within the duration of the parties' marriage.

[2]Husband's 401-K plan increases at a rate of approximately $3,000.00 per year.

4

amounts: $2,000.00 per month beginning October 1, 1995 and ending December 31, 1995; $1,800.00 per month beginning January 1, 1996 and ending December 31, 1996; $1,500.00 per month beginning January 1, 1997 and ending December 31, 1998; $1,200.00 per month beginning January 1, 1999 and ending on Wife's sixty-fifth birthday, September 5, 2001; and $600.00 per month from September 2001 until Wife's death or remarriage; and

2) Whether the trial court erred in awarding Wife alimony *in solido* in the amount of $6,638.50 in order to aid Wife in paying her attorney fees incurred in this matter.

Tenn. Code Ann. § 36-5-101(d)(1) provides as follows:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient .

As noted by the supreme court in Self v. Self, 861 S.W.2d 360, 361 (Tenn. 1993), T.C.A. § 36-5-101(d)(1) reflects a clear legislative intent to allow an award for permanent alimony only "when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary." Thus, there must be a threshold determination by the trial judge that rehabilitation of the economically disadvantaged spouse is not feasible based upon consideration of all relevant factors. Kincaid v. Kincaid, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

In determining whether the granting of an order for payment of support and maintenance to a party is proper, the court shall consider all relevant factors, including:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

5

(C) The duration of the marriage;
(D) The age and mental condition of each party;
(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(G) The separate assets of each party, both real and personal, tangible and intangible;
(H) The provisions made with regard to the marital property as defined in Sec. 36-4-121;
(I) The standard of living of the parties established during the marriage;
(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so;  and
(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-101(d)(1).


Nonetheless, trial courts have broad discretion in determining whether to award alimony and in determining the amount and duration of alimony.  Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995);  Brown v. Brown, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994);  Loyd v. Loyd, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993);  Houghland v. Houghland, 844 S.W.2d 619, 621 (Tenn. Ct. App. 1992);  Lancaster v. Lancaster, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984).   As a general rule, we are disinclined to alter a trial court's award of alimony unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes.  Brown, 913 S.W.2d at 169; Gilliam v. Gilliam, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988); Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).


The decision to award alimony is factually driven and requires a balancing of the factors enumerated in T.C.A. § 36-5-101(d)(1).  Denton v. Denton, 902 S.W.2d 930, 932 (Tenn. Ct. App. 1995);  Loyd, 860 S.W.2d at 412.   The need of the spouse to whom alimony is awarded and the ability of the other to pay are two dominant factors to consider when deciding a proper award of alimony.  Kincaid, 912 S.W.2d at 144; Smith v. Smith,

6

912 S.W.2d 155, 159 (Tenn. Ct. App. 1995); McCarty v. McCarty, 863 S.W.2d 716, 720 (Tenn. Ct. App. 1992); Loyd, 860 S.W.2d at 412; Gilliam, 776 S.W.2d at 86; Lancaster, 671 S.W.2d at 503. Moreover, the fault of a spouse in precipitating a divorce is also a consideration when determining an alimony award. T.C.A. § 36-5-101(d)(1)(K); Gilliam, 776 S.W.2d at 86.

A wife whose marriage has been shattered by her husband's misconduct should not be left in a financial condition inferior to her economic situation prior to the parties' divorce. Aaron, 909 S.W.2d at 410-11; Gilliam, 776 S.W.2d at 86; Shackleford v. Shackleford, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). However, in recognizing the premise that a divorce should not economically prejudice an innocent spouse, this idea must be tempered by the statutory factors set forth in T.C.A. § 36-5-101(d)(1). Brown, 913 S.W.2d at 169-70.

In the present case, upon consideration of Wife's age, limited earning capacity, physical condition, the infeasibility of Wife's rehabilitation, the forty-one year duration of the marriage, the tangible and intangible contributions Wife made during the marriage, and the relative fault of Husband in precipitating this action for separate maintenance, we hold that the trial court did not err in awarding Wife alimony *in futuro* in the aforementioned amounts.

The awarding of attorney fees in a divorce proceeding is within the sound discretion of the trial court, and this Court will not interfere with the trial court's award unless the evidence preponderates against such a decision. Houghland, 844 S.W.2d at 623; Storey v. Storey, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); McCarty, 863 S.W.2d at 722; Batson v. Batson, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988); Lyon v. Lyon, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988); Crouch v. Crouch, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964). Attorney fee awards in divorce actions are treated as alimony; thus, when determining whether to award attorney fees, consideration should be given to the statutory factors enumerated in T.C.A. § 36-5-101(d). Kincaid, 912 S.W.2d at 140; Storey, 835 S.W.2d at 598; Raskind v. Raskind, 325 S.W.2d 617, 625 (Tenn. Ct. App. 1959).

7

Trial courts have the discretion to make awards to help a spouse defray his or her legal expenses in a divorce case. Fox v. Fox, 657 S.W.2d 747, 749 (Tenn. 1983); Loyd, 860 S.W.2d at 413. These awards are appropriate only when the spouse seeking them lacks sufficient funds to pay for his or her legal expenses or would be required to deplete his or her resources in order to pay these expenses. Brown, 913 S.W.2d at 170; Houghland, 844 S.W.2d at 623; Ingram, 721 S.W.2d at 264; Harwell v. Harwell, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980).

In the case at bar, based upon Wife's age, limited earning capacity, limited resources, physical condition, the forty-one year duration of the marriage, the tangible and intangible contributions Wife made during the marriage, and the relative fault of Husband in precipitating this action for separate maintenance, we do not find that the evidence preponderates against the trial court decision to award Wife $6,638.50 as alimony *in solido* in order to aid Wife in paying her attorney fees incurred in this matter.

The judgment of the trial court is hereby affirmed. Costs on appeal are taxed to Appellant for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.

8