## IN THE COURT OF APPEALS OF
## TENNESSEE AT JACKSON

MARY ANN QUINN,          )

    Plaintiff/Appellant,  ) Shelby Chancery No. D27744 ) VS.

                          ) Appeal No. 02A01-9803-CH

                          ) -2 R.D.

GREGORY M. QUINN,      )

    Defendant/Appellee.    )

FILED

March 25, 1999

00089

Cecil Crowson, Jr.

## APPEAL FROM THE CHANCERY COURT OF SHELBY
## COUNTY AT MEMPHIS, TENNESSEE THE HONORABLE
## FLOYD PEETE, JR., CHANCELLOR

**MITCHELL D. MOSKOVITZ LISA E. CIRCEO** Memphis, Tennessee Attorneys for Appellant


**WENDY S. DABBOUS** Memphis, Tennessee Attorney for Appellee

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

                    **ALAN E. HIGHERS, J.**

**CONCUR:**

☺. **FRANK CRAWFORD, P.J.,**

**W.S. HOLLY KIRBY LILLARD, J.**

Mary Ann Quinn ("Wife" or "Appellant") appeals the judgment of the trial court which ordered Gregory M. Quinn ("Husband" or "Appellee") to pay for the parties' minor child's private school tuition in monthly increments designated as alimony; ordered Husband to pay a portion of Wife's attorney fees; and classified the following property of the parties:

1. Amer. Express IDS Flexible Annuity Account ($58,775)

Husband 2. Charles Schwab Account ($54,190)

Husband

3. Residence at 2368 Circle ($100,000)                    40% Husband/60% Marital

## I. Factual and Procedural History

Wife and Husband were divorced on February 3, 1998, after fourteen years of marriage. Most of the issues of the divorce were agreed upon between the parties and announced to the court prior to trial.

In classifying the parties' property as marital or separate, the trial court determined that the American Express IDS Flexible Annuity Account ("IDS account"), and the Charles Schwab Account ("Schwab account") were Husband's separate property. The trial court further classified the parties' residence at 2368 Circle as 60% marital and 40% Husband's separate property. The trial court ruled Wife and child should be allowed to reside in the home until the child reaches the age of majority, with Husband paying 60% and Wife paying 40% of the mortgage. At that time, Husband must pay to Wife one half of the equity accrued during the marriage (approximately $6,000.00), and one half of the future equity which will accrue in the home while Wife and child continue to reside there.

At the time Husband inherited the Circle Avenue property it was valued at $100,000.00 and Husband inherited a 25% interest. Husband purchased an additional 15% interest in the property from his siblings with funds he inherited from his father. The parties then obtained a mortgage to purchase theremaining interest (60%) from Husband's siblings.

Husband also inherited an investment account his father had maintained with Schwab. After his father's death, Husband was informed that he would have to re-title the account into his own name. He then put the account in both his and Wife's name. No marital funds were ever deposited into this account, nor was any money ever withdrawn.

Like the Schwab account, the funds used to open the IDS account were also inherited by Husband from his father. The funds originally came from a First American savings account which was owned by Husband's father. The funds were then transferred into a newly-opened joint account of the parties where they remained for less than one month before being withdrawn to open the IDS account. The parties met jointly with Vera Feldman, a financial advisor, to set up certain IDS accounts. Feldman testified that both Husband and Wife have set up individual funds with money theyhad separately inherited.

Feldman verified that Wife had no control over the IDS account. Husband named Wife as the beneficiary of the IDS account.

At trial, both parties agreed their son should remain in private school. Wife stated that if she did not receive some form of financial assistance she would be unable to afford private school tuition. Husband was ordered to pay $688.00 per month as child support in accordancewith thechild support guidelines.Additionally, theCourt ordered that Husband pay the private school tuition each year to Wife in the form of alimony.

The trial court established a formula for the payment of Wife's attorney fees. The court held Husband was to pay one-half Wife's attorney fees incurred prior to January 31, 1998, or $1,500.00, andone-halfWife's attorney fees incurred since January31,1998, not to exceed $2,500.00.

## II. Real Property

The home at 2368 Circle Avenue was inherited by Husband and his siblings during the course of the marriage when Husband's father died in 1993. At the time Husband inherited the property, it was valued at OneHundred Thousand Dollars ($100,000.00) and Husband inherited a twentyfive percent (25%) interest. Husband purchased an additional fifteen percent (15%) interest in the property from his siblings with funds he inherited from his father. Husband and Wife then obtained a mortgage to purchase the remaining sixty percent (60%) interest from Husband's siblings. Husband,Wife andtheir minor son moved into the house and the home was jointly titled in the parties' names.

Evidence at trial established that the Circle Avenue home had been in Husband's familyfor more than fifty years. Husband's grandfather originally purchased the home and raised his familythere. When he died, Husband's father inherited the home and raised his family in it. Husband wished to raise his son in the ancestral home before Wife filed for divorce. When Wife requested Husband leave the home, Husband returned to theparties' former residence on Choctaw Avenue which the parties still own. Husband testified he wanted to minimize the disruption in his son's life so he consented to Wife and child remaining in the Circle Avenue home pending the divorce. Husband testified he never intended to abandon his ancestral home.

The trial court ruled that theforty percent (40%) interest in thehome which Husband inherited or purchased with inherited funds is Husband's separate property. The trial court deemed the remaining sixty percent (60%) interest in the home to be marital property. The court ruled that Wife and minor child should be allowed to continue to reside in the home until the child reaches the age of majority. At that time, or if Wife chooses to move prior to that time, Husband must pay to Wife one half of the equity which accrued during the marriage and one half of the future equity which will accrue in the home while Wife

and child continue to reside there. The court ordered Husband to pay sixty percent (60%) and Wife to pay forty percent (40%) of the mortgage while Wife and minor child reside in the home.

At the outset of our discussion we note that in accordance with Tenn.R.App.P. 13(d), the role of this Court is to review the record made in the trial court de novo with the presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. Thus, we will affirm the trial court's decision unless there is an error of law affecting the result or unless the evidence preponderates against the trial court's factual determinations. Campanali v. Campanali, 695 S.W.2d 193, 194 (Tenn. App.1985) (citations omitted).

Wife contends that the trial court erred in finding the Circle Avenue property to be only sixty percent (60%) marital. Wife argues that the home was inherited by Husband during the marriage, treated as the "family home," and jointly titled. Wife asserts that the home is marital property in its entirety pursuant to the equitable doctrine of transmutation, and that the property should have been awarded to Wife.

This Court addressed the doctrine of transmutation in the case of McClellan v. McClellan, 873 S.W.2d 350 (Tenn. App. 1993).

> Transmutation occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in thenames of both spouses. The rationale underlying both of these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

Id. at 351.

In theMcClellan case,a husband and wife purchased a home using funds inherited by the husband ($20,000.00) for the down payment. The property was titled in the names of both parties. The trial court found the property to be marital and awarded the home to the husband. The wife appealed the judgment asserting that she should have been awarded at least one half of the marital residence. The husband argued that the trial court should have found theresidence to be his separate property as he only agreed to have the property titled in both their names because the wife threatened to sue for divorce if the property was not also titled in her name. The Court of Appeals focused on the husband's testimony that he intended to have the house for the family and affirmed the trial court's finding that the property was marital. The Court also affirmed the award of the property to the husband.

4

In the case at hand, Wife argues that the home was titled jointly, financed jointly, and treated as a "family home." Husband contends that although there is a rebuttable presumption that he intended to make a gift to the marriage, McClellan also states that the presumption can be rebutted by evidence of circumstance or communications clearly indicating that the property remain separate. Although the McClellan court did not define what those circumstances might be, Husband contends that the present case presents an appropriate set of circumstances. Husband argues that a home which has been in Husband's family for over fifty years should be viewed differently than a home without this designation which parties purchase together using inherited funds for the down payment, as in McClellan.

The evidence in this case preponderates against the trial court's finding that the home is forty percent (40%) separate and sixty percent (60%) marital. Although Husband used his own funds to purchase 40% of the house on Circle Avenue, the home was jointly titled in both Husband's and Wife's names. The presumption that a gift to the marital estate was intended can be rebutted by evidence clearly indicating an intent that the property remain separate. There is no indication in the record that Husband ever treated the Circle Avenue property as if it were his separate property. Based upon the status of the title of the Circle Avenue property, and in the absence of proof that Husband clearly intended that the home would remain his separate property, we find that the home was marital property.

Our statutes provide that in divorce cases the court shall equitably divide the marital property of the parties. Tenn. Code Ann. §36-4-121(a). An equitable division however is

notnecessarilyan equal one. Barnhill v. Barnhill, 826 S.W.2d 443, 456 (Tenn.App. 1991).

> Trial courts are afforded wide discretion in dividing the interests of parties in jointly owned property. Accordingly, the trial court's distribution will be given great weight on appeal, and will be presumed to be correct unless we find the preponderance of the evidence is otherwise.

Id. at 449.

Pursuant to Tenn. Code Ann. §36-4-121(c), trial courts are guided by many factors in making an equitable division of marital property. One important factor is "the contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner, or parent." (Tenn. Code Ann. §36-4-121(c)(5)). Under this factor and the catchall provision, "Such other factors as are necessary to consider the equities between the parties" (Tenn. Code Ann. §36-4-121(c)(10)), the trial court was able to factor in Husband's use of inherited funds to purchase forty percent (40%) of the home, and the length of time the home has been in Husband's family.

5

Although the Circle Avenue property became marital property under the doctrine of transmutation, Husband's use of inherited funds to purchase the home, and the fact that the home has been passed down through several generations in Husband's family, are relevant to the equitable division of the property. The evidence does not preponderate against the trial court's division of the Circle Avenue property. While the property should properly be classified as marital, the division of the property shall remain the same. Wife shall be entitled to half of the equity which accrued during the marriage (approximately $6,000) and half of the future equity which will accrue while Wife and child are residing in the home, to be paid by Husband at the time Wife and child leave the home. The trial court's judgment regarding occupancy of the home, payment of mortgage, and sale of the home shall also remain the same.

### III. IDS and Schwab Accounts

WhenHusband's fatherdied in 1993, Husband inherited an investment account with Charles Schwab and a First American savings account. Initially, the Schwab account remained in Husband's father's name until Husband was advised that the account must be under a living person's social security number. Husband testified that he retitled the account into his and Wife's name in an effort to protect Wife in case of Husband's untimely

death.

Similarly, the IDS account was opened by Husband with funds inherited from his father's First American savings account. Like the Schwab account, Husband eventually had to retitle this account or move the funds out of his father's name. The parties opened whatlater becametheFAIR account with First American Bank andHusband depositedthe funds from his father's First American account (approximately $50,000.00) into the joint account in December of 1994. On January 30, 1995, Husband transferred the money out ofthat account to American Express Financial Advisors to open theIDS account. Husband opened the IDS account in his name solely and named Wife as beneficiary in the event of his untimely death.

The trial court found both theIDS andSchwab accounts to be theseparate property of Husband and awarded them to Husband. Wife contends that the IDS and Schwab accounts are marital property under the doctrine of transmutation. The Schwab account was jointly titled, giving rise to thepresumption that Husband intended to make a gift to the marriage. The IDS account was funded with money from the joint FAIR account. Wife

contends the commingling of the martial and separate property resulted in transmutation of the IDS account.

The Schwab account was jointly titled in the parties' names. Under the doctrine of transmutation, this creates a rebuttable presumption of a gift to the marital estate. As spelled out in McClellan, the presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate. McClellan at 351. Husband testified that he titled the Schwab account in both parties' names in an effort to protect Wife in case of Husband's untimely death, as Husband is a police officer. Husband testified that having recently been through the probate process with his father's estate, Husband felt this was the most reasonable and prudent thing to do.

The jointly-titled Schwab account consists entirely of Husband's inherited funds. Wife stated that no funds had been withdrawn by either party since the account was put in both parties' names nor have any marital funds been deposited into the account. Husband offered a plausible explanation for titling the account in both parties' names. The evidence does not preponderate against the trial court's finding that the Schwab account was the separate property of Husband.

The IDS account was titled in Husband's name only. The account was funded entirely with money inherited by Husband. Wife's only avenue for asserting that this account be deemed marital property is the fact that the inherited money was transferred out of Husband's father's account and into a joint account of the parties for a period of one month before it was transferred to the separately titled IDS account. Wife asserts that such commingling of marital and separate funds invokes the doctrine of transmutation and the presumption that Husband intended a gift to the marital estate. The evidence does not support this argument.

While the inherited funds were briefly in the joint account, no marital funds were deposited into the joint account nor were any funds withdrawn from the account. "The mere fact that the funds were placed for a time in a joint account does not require that they be considered marital property." Fendley v. Fendley, No. 01A01-9509-CH-00418, 1997 LEXIS 469, at *6 (Tenn. Ct. App. July 2, 1997).

"A presumption arises that when deposits are made into a joint bank account between spouses, the parties share a joint ownership in the funds on deposit. This presumption, however, is rebuttable by either spouse wishing to show that the account consists of his separate property only." Mosher v. Mosher, No. 2, 1988 LEXIS 212, at *4 (Tenn. Ct. App. March 3, 1988) (citations omitted). While the funds used to open the IDS

7

amount came out of the parties' joint account, the funds in the account consisted of Husband's separate property. The circumstances here indicate Husband's intent that the property remain separate.

Wife argues that the IDS account could not have been titled jointly. However, Vera Feldman, American Express financial advisor, testified that Husband chose an annuity which could have only one owner instead of requesting an annuity allowing both parties to be listed as owners. Additionally, Husband stated to Feldman that the funds for the annuity were part of his inheritance.

The brevity of the period in which the funds were placed in the joint account, coupled with Husband's titling the IDS account in his name only, evidenced Husband's intent that the funds remain his separate property. The evidence does not preponderate against the trial court's finding that the IDS account was Husband's separate property.

For all the above stated reasons, the trial court did not err in holding that the Charles Schwab account and the IDS account were the separate property of Husband.

## IV. Private School Tuition

The trial court ruled that Wife would be designated the primary custodial guardian of the parties' minor child and Husband would be responsible for the payment of child support pursuant to the Department of Human Services Guidelines. The parties agreed that the child should continue to attend private school better to address his Attention Deficit Disorder. The trial court ordered Husband to pay for the child's private school tuition and designated Husband's payment of tuition as alimony, deductible to Husband and taxable to Wife. Wife contends that the trial court erred in designating the payment of child's tuition as alimony as it is exclusively for the benefit of the child and is thus, in the nature of child support.

As Professor Clark has stated "[t]he purpose of alimony is to care for the wife's needs after divorce . . ." H. Clark, Law of Domestic Relations § 14.9(4) (1968). Tennessee courts have consistently held that need is one of the most important factors in the award of alimony, with the sole purpose of alimony being to provide for a disadvantaged spouse's needs after divorce. Lancaster v. Lancaster, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984); Aleshire v. Aleshire, 642 S.W.2d 729, 733 (Tenn. Ct. App.1981). Tennessee Code Annotated §36-5-101(d), sets out the factors the court must consider in setting alimony, and the does not mention special education needs of children.

8

While the child support amounts set forth in the Guidelines do not include private school tuition, the Guidelines provide for the upward adjustment of child support for extraordinary educational expenses:

> (1) Since these percentage amounts are minimums, the court shall increase the award calculated in Rule 1240-2-4-.03 for the following reasons:
>
> (c) Extraordinary educational expenses and extraordinary medical expenses not covered by insurance shall be added to the percentage calculated in the above rule.

Tenn. Comp. R. & Regs. tit. 10, ch. 1240-2-4-.04-.04(1)(c) (1994).

In Dwight v. Dwight, 936 S.W.2d 945 (Tenn. App.1996), this Court found that private school tuition is not to be considered as a portion of child support under the Guideline percentages and that child support can be adjusted upward for private school tuition. Id.

at 950.

Husband points to the case of Smith v. Smith, No. 01-A-01-9705-CH-00216, 1997 LEXIS 733 (Tenn. App. October 29, 1997) as support for his position that a minor child's private school tuition may be properly designated as alimony. In Smith, the Court of Appeals held that the trial court was within its discretion in ordering a reduction in alimony when part of the alimony had originally been awarded to help Wife pay for the minor child's private school tuition and minor child was later enrolled in public school.

Although the Smith case is certainly one instance of a trial court classifying tuition as alimony, the issue on appeal was not the propriety of that classification, but whether the trial court erred in decreasing the alimony award upon the child's enrollment in public school. The Court of Appeals found that the trial court did not abuse its discretion in reducing the alimony award. The issue in Smith was not whether the tuition should have been classified as child support versus alimony. However, the Court of Appeals did make mention of this issue:

> We believe that both parties would concede that Tenn. Code Ann. §36-5-101(d), which sets out the factors the court must consider in setting alimony, does not specifically mention special education needs of the children, and that such needs are addressed in the provisions for deviation from the child support guidelines found in Tenn. Rules & Regs. 12-2-4-.04(1)(c).

Smith at *5-6.

Ultimately, the Court in Smith did not rule upon the propriety of classifying private tuition as alimony and is therefore not controlling in the case at hand.

Husband's payment of tuition is clearly for the benefit of the minor child. While private school tuition is not to be considered as a portion of child support under the Guideline percentages, the Child Support Guidelines and Tennessee case law provide that child support can be adjusted upward for private school tuition. Furthermore, the factors

9

to be considered by the court in setting alimony make no mention of special education needs of minor children. The private school tuition is clearly child support and the trial court abused its discretion in designating Husband's payment of the minor child's private school tuition as alimony.

Tennessee Code Annotated §36-5-101(e)(1) requires the trial court, when deviating from the Child Support Guidelines, to make a written finding that the application of the Guidelines would be unjust or inappropriate. Although the trial court found that the parties' minor child should continue to attend Catholic High School, the finding was not in the context of child support, and is insufficient to constitute a written finding that the application of the Guidelines is inappropriate in this case.[1] Accordingly, this case is remanded for additional written findings consistent with this opinion.

## V. Attorney Fees

The trial court established a formula for the payment of Wife's attorneys' fees. The court held that Husband was to pay one half of Wife's attorneys' fees incurred prior to January 31, 1998, or $1500.00, and one half of Wife's attorneys' fees incurred since January 31, 1998, not to exceed $2500.00. Wife incurred total attorneys' fees and suit expenses of $7,522.05 at the time of trial.

Wife contends that given the comparative needs of the parties and their ability to pay their attorneys, the trial court should have required Husband to pay all of Wife's attorneys' fees. Husband argues that as Wife received half of the parties marital assets, alimony, child support and has considerable amount of separate property, Wife clearly has adequate funds from which to pay her attorney's fees. Husband contends this holding should be reversed and each party ordered to pay their own attorney's fees.

The trial court has wide discretion in determining the amount, if any, of attorney's fees to be awarded. Crouch v. Crouch, 53 Tenn. App. 594, 605; 385 S.W.2d 288, 293 (1964). At the conclusion of a divorce case, if the wife is without sufficient resources properly to compensate her attorney, and if the financial provisions made for the wife by way of alimony, periodic or *in solido*, do not include the means out of which counsel fees can reasonably be paid, the court is authorized to grant to the wife additional alimony for the purpose of enabling her to pay her attorney. Palmer v. Palmer, 562 S.W.2d 833, 839 (Tenn. App. 1977); Ligon v. Ligon, 597 S.W.2d 310 (Tenn. App. 1979); and Ligon v.

---

[1] We note, however, that a written finding that the child had a special disability and that he has particularly benefitted from private school education in the past, will satisfy the requirement. *See* Quarry v. Quarry, No. 02A01-9111-CH-00262, 1992 WL 141796, at *2 (Tenn. App. June 25, 1992).

Ligon, 556 S.W.2d 763 (Tenn. App. 1977). Thus, this Court will not disturb the trial court's decision regarding attorneys' fees unless the decision is not supported by a preponderance of the evidence.

The right to an allowance of legal expenses is not absolute. It is conditioned upon a lack of resources to prosecute or defend a suit in good faith. This rule is to enable the wife, when destitute of means of her own, to obtain justice and to prevent its denial. Fox v. Fox, 657 S.W.2d 747, 749 (Tenn.1983).

In the final decree of divorce, Husband was ordered to pay to Wife the sum of Fourteen Thousand Nine Hundred Forty-Four Dollars ($14,944.00) to effectuate an equal division of the parties' retirement/pension accounts and the sum of One Thousand Five hundred Dollars ($1,500.00) as Wife's share of the 1978 Harley motorcycle sold by Husband during the divorce proceedings. Wife was awarded one half of the First American Bank FAIR account balance of Seventeen Thousand Ninety-Three Dollars ($17,093.00). Wife was awarded the exclusive use of the home on Circle Avenue with Husband being ordered to pay sixty percent (60%) of the mortgage and Wife forty percent (40%). Additionally, Wife retained separate property totaling in excess of Sixty Thousand Dollars ($60,000.00).

The trial court assessed costs against Husband and ordered Husband to pay a total sum of Four Thousand Dollars ($4,000.00) to Wife for attorneys' fees, leaving Wife to pay the balance of Three Thousand Five Hundred Twenty-Two Dollars ($3,522.05). This Court is of the opinion that Wife has received sufficient resources to compensate her attorneys for any remaining fees and expenses incurred on her behalf. Taking into account both the property settlement and the relative income levels of the parties, it does not appear to us that the evidence preponderates against the decision of the trial court.

Wife also contends that Husband should be required to pay the reasonable attorneys' fees for Wife on appeal. This Court is of the opinion that this case does not require an award to Wife for attorneys' fees on appeal. As we have stated in our discussion of attorneys' fees above, Wife has adequate financial resources with which to compensate her attorneys.

**VI. Conclusion**

The judgment of the trial court is affirmed in part, reversed in part, and remanded for a written finding required on the child support guideline deviation issue. Costs on

11

appeal are taxed to appellant.

_____

HIGHERS, J.

CONCUR:

~~CRAWFORD, P.J., W.S.~~

~~LILLARD, J.~~