# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 2000 Session

## NANCY BATMAN BLOOM v. DOUGLAS HUGH BLOOM

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 154152 R.D.     Kay S. Robilio, Judge**

---

**No. W1998-00365-COA-R3-CV - Filed September 14, 2000**

---

This is a divorce case. The parties were married for eighteen years and had a fifteen year old son. The wife was granted the divorce. The wife was awarded, *inter alia*, the marital home and the equity in it, 60% of the value of various financial assets, her automobile, and various household furnishings. Custody of the parties' son was awarded to the wife, and the husband was granted supervised visitation. The husband was ordered to pay child support. The wife was awarded 60 months of rehabilitative alimony, with the rate of rehabilitative alimony to increase when the husband's child support obligation ends. The wife's request for attorney's fees was denied. The husband appeals the division of the marital property and the amount of rehabilitative alimony awarded. The wife appeals the denial of her request for attorney's fees. We affirm, finding that the preponderance of the evidence supports the trial court's division of the marital property, the award of alimony, and the denial of the wife's request for attorney's fees.

**Tenn. R. App. P. 3; Appeall as of Right; Judgment of the Circuit Court is affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J. W.S., and DAVID R. FARMER, J. joined.

James D. Causey and Jean E. Markowitz, Memphis, Tennessee, for the Appellant, Douglas Hugh Bloom.

Linda L. Holmes, Memphis, Tennessee, for the Appellee, Nancy Batman Bloom.

### OPINION

In this divorce case, Appellant Douglas Hugh Bloom ("Husband") and Appellee Nancy Batman Bloom ("Wife") married on June 6, 1980. It was the second marriage for both. The parties had one child, a son, Jeffrey, who was fifteen at the time of trial. Husband is a financial consultant with Smith-Barney. During the marriage, Wife was a full-time homemaker.

The parties separated on December 6, 1996. Wife filed a complaint for divorce on December 17, 1996, citing irreconcilable differences and Husband's inappropriate marital conduct. (R, 2) Husband filed an answer and cross-complaint for divorce, alleging irreconcilable differences and Wife's inappropriate marital conduct. Wife later amended her complaint, alleging that Husband was guilty of adultery.

A four day bench trial on the matter was held from August 4 through August 7, 1997. Prior to trial, Husband stipulated to inappropriate marital conduct and adultery. The parties' son, Jeffrey, had been diagnosed with attention deficit disorder and hyperactivity (ADHD), and a substantial amount of time at trial was spent on testimony regarding Jeffrey's special needs. Substantial trial time was also spent on Wife's allegations that Husband had dissipated marital assets on his paramour, in violation of a court order.

At trial, Husband testified that he has a bachelor's degree in marketing and a master's degree in business administration. At the time of trial, he had been a financial consultant with Smith-Barney for ten years. His income for the first seven months of 1997 was $96,614.35. His tax returns from the previous three years indicated a gross annual income in 1996 of $139,968, $121,816 in 1995, and $103,802 in 1994. Husband acknowledged that Wife had been a homemaker since shortly before Jeffrey was born, and that she had not worked outside the home. Husband admitted several instances of "inappropriate behavior" with Jeffrey, in which he had lost his temper and been physically violent with him. Husband testified that Jeffrey's ADHD made him a "difficult" child. Husband said that he also has ADHD. He testified that it enabled him to sympathize with Jeffrey's problems, but also implied it caused him to more easily lose patience with his son. Husband admitted that he had given Jeffrey over-the-counter steroids, despite Wife's objections.

Wife testified that she worked for a brief period after the parties married, but quit work when she was pregnant with Jeffrey, and had been a homemaker for the remainder of the marriage. Over twenty-five years ago, she earned two and one-half years of college credit. Wife testified that she was pre-admitted to the University of Memphis, but did not yet know if any of her prior college work could be applied towards her degree. She said that she intended to major in paralegal studies, and hoped to eventually attend law school.

On August 20, 1997 the trial court granted Wife a divorce on the grounds of Husband's inappropriate marital conduct and adultery. Husband's cross-complaint for divorce was dismissed. All other matters were reserved until several months later. On October 27, 1997, the trial court issued the final decree of divorce. Over one year later, on December 4, 1998, the trial court issued an amended final decree of divorce. The amended final decree awarded Wife, *inter alia*, the marital home, with equity of approximately $39,000; sixty percent of the value of Husband's pension plan with his employer; sixty percent of the value of all IRA's, 401ks and joint accounts, with a combined value of approximately $71,000; her 1995 Mazda, worth approximately $8,000; Husband's guns; and various household furnishings in the marital home. Custody of the parties' son was granted to Wife, and Husband was awarded supervised visitation, on a schedule to be based upon the recommendation of Jeffrey's health care professionals. Husband was ordered to pay Wife child

support of $1,950 per month. Husband was ordered to pay Wife rehabilitative alimony for a period of 60 months. The rate of rehabilitative alimony was set at $2,500 per month during the time in which Husband was obligated to pay child support. When Husband's child support obligation ended, the amount of Wife's rehabilitative alimony would automatically increase to $4,000 per month. The trial court's order states:

> Defendant shall pay to Plaintiff as rehabilitative alimony the sum of $2,500.00 per month to be paid by automatic bank deposit by the fifteenth (15th) day of each and every month, commencing October 15, 1997, until the parties' minor child reaches the age of 18 and his class graduates from High School whichever occurs last. The first month after Defendant's obligation to pay child support ceases, Defendant shall pay Plaintiff the sum of $4,000 per month as rehabilitative alimony. Said payments of rehabilitative alimony shall continue for a total period of sixty (60) months from October 1, 1997, unless Defendant dies, Plaintiff dies or remarries, whichever shall occur first, in which event Defendant's obligation to pay rehabilitative alimony for sixty (60) months shall terminate.

Each party was ordered to assume responsibility for his or her own attorney's fees. Husband was ordered to pay the court costs. From this order, Husband and Wife now appeal.

On appeal, Husband argues that the trial court erred in its division of the marital estate, in not ordering that the marital home be sold, and in its award of alimony. Wife appeals the trial court's denial of her request for attorney's fees. We first address Husband's issues on appeal.

Husband argues that the trial court erred in its division of the marital estate, and in not ordering that the marital home be sold. He contends that awarding Wife the marital home and 60 percent of the value of Husband's pension plan and various other accounts is inequitable. Husband points out that Wife is in good health, was only 44 years old at the time of trial, and had two and one-half years of college credit. He asserts that "neither party has any more ability to earn capital assets than the other," and contends that the assets should have been divided more evenly. Husband also argues that the trial court should have ordered that the marital home be sold. Husband asserts that the home is too large for two people, and that its mortgage of $1,445.84 unnecessarily raises Wife's living expenses. Husband contends that "it is impracticable for Husband to support the maintenance of the home, which he is doing with child support and alimony, and support himself." In the alternative, Husband seeks an order that Wife be required to sell the marital home upon Jeffrey's graduation from high school, and that the proceeds be divided equally between the parties, based upon the equity in the home at the time of the divorce.

Wife argues that the trial court's division of the marital property was equitable, given the long duration of the marriage and the parties' differing vocational skills. She notes that she has not worked since before Jeffrey was born, and has not had any vocational training or education since she attended college over twenty-five years ago. Wife asserts that she substantially contributed to the

accumulation of marital property, through her role as homemaker. Wife maintains that the trial court did not err by awarding her the marital home.

In dividing the marital property in a divorce, the trial court is afforded wide discretion, and its distribution will be given "great weight" on appeal. *See Ford v. Ford*, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1996). Unless the evidence preponderates against the trial court's division of the property, the trial court's decision will not be disturbed on appeal. *See Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998); Tenn.R.App.P. 13(d).

Although the trial court is to divide marital property equitably, an equitable division need not be an equal division. *See Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997). *See also Ford*, 952 S.W.2d at 825 (noting that equitable division of marital property does not necessarily mean an equal division of property). Guidelines for the equitable division of marital property are set forth in Tenn. Code Ann. § 36-4-121 (c) (1996). Among the factors the trial court is to consider in its division of property are:

> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training, or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital property or separate property, including the contribution of a party as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>
> * * * *

Tenn. Code Ann. §36-4-121(c) (1996).

In this case, the parties had been married since 1980. During the fourteen years preceding the parties' separation, Wife functioned solely as a homemaker. Husband acknowledged that Wife had fulfilled her duties in that role, as well as managing the household, paying all bills and assuming the responsibility for the home. Without a college degree, vocational training, or any work experience for the previous sixteen years, it is beyond question that Wife has less ability to acquire assets in the future than does Husband, a successful financial planner whose income for the first seven months of 1997 was over $97,000. Under these circumstances, we find no abuse of discretion

-4-

in the trial court's division of the marital estate, including the award of the marital home to Wife.

Husband next argues that the trial court erred in its award of rehabilitative alimony. Husband contends that the trial court abused its discretion by ordering that Husband's rehabilitative alimony obligation automatically increase from $2,500 to $4,000 per month once his obligation to pay child support ends.

The trial court is afforded wide discretion concerning the award of alimony, and the alimony award should be reversed only in instances in which this discretion "has manifestly been abused." **Hanover v. Hanover**, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989). The trial court has "broad discretion" to determine the amount, nature, and duration of alimony. **Kinard v. Kinard**, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). Guidelines for the determination of alimony are set forth in Tennessee Code Annotated § 36-5-101(d) (Supp. 1999). "While there is no absolute formula for determining the amount of alimony, 'the real need of the spouse seeking the support is the single most important factor.' " **Aaron v. Aaron**, 909 S.W.2d 408, 410 (Tenn. 1995) (quoting **Cranford v. Cranford**, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). Another key consideration is the ability to pay of the obligor spouse. **See Anderton v. Anderton**, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998).

In this case, Husband's average monthly net income was $9,566, while Wife has no monthly income outside the support received from Husband. Wife has few vocational skills, and little experience in the job market. At trial, Wife indicated her intent to complete her college degree, and possibly attend law school. Clearly Wife has a need for rehabilitative alimony, and Husband has the ability to pay the amount of rehabilitative alimony awarded.

Husband argues that the trial court abused its discretion by ordering that Wife's rehabilitative alimony automatically increase from $2,500 to $4,000 per month when Husband's obligation to pay child support ends. However, Husband's ability to pay alimony "is directly affected by the termination of his child support obligation. His ability to pay increases once he is no longer obliged to pay child support." **Erwin v. Erwin**, No. W1998-00801-COA-R3-CV, 2000 WL 987339, at *2 (Tenn. Ct. App. June 26, 2000). Under these circumstances, we cannot conclude that the trial court abused its discretion in requiring Husband to pay additional rehabilitative alimony when he is no longer obliged to pay child support. Accordingly, the award of alimony is affirmed.

Wife argues on appeal that the trial court erred by denying her request for attorney's fees. Wife argues that the assets she was awarded in the divorce, namely, portions of Husband's 401k and other retirement accounts, cannot easily be liquidated to pay her attorney's fees. Wife asserts that she needs the assets she was awarded in order to fund her retirement and "secure [her] future until she can earn a living." Wife also argues that Husband's "difficult behavior" unnecessarily increased her attorney's fees. Wife contends that Husband refused pre-trial requests for documents, and denied the existence of certain records that he later produced at trial.

An award of attorney's fees in a divorce is considered to be an award of alimony. ***Long v. Long***, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997). As with alimony, a trial court has broad discretion regarding the award or denial of attorney's fees, and it will not be reversed "except upon a clear showing of abuse of that discretion." ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995) (citing ***Storey v. Storey***, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992) and ***Crouch v. Crouch***, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)).

In this case, in addition to the marital home, Wife was awarded 60 percent of various financial assets, including bank accounts. Under these circumstances, we do not conclude that the trial court abused its discretion in ordering that each party be responsible for his or her own attorney's fees. Therefore, the trial court's decision is affirmed on this issue.

The decision of the trial court is affirmed. Costs on appeal are taxed equally to the Appellant, Douglas Hugh Bloom, and the Appellee, Nancy Batman Bloom, and their sureties, for which execution may issue, if necessary.

_____

HOLLY KIRBY LILLARD, J.